Christopher **BOYD**

v.

Warden, Sci **WAYMART**; District Attorney of Philadelphia County, Pennsylvania; Attorney General, Commonwealth of Pennsylvania, Appellants.

No. 07–2185.

United States Court of Appeals, Third Circuit.

Argued Oct. 25, 2007.

Reargued En Banc Nov. 19, 2008.

Filed July 31, 2009.

332

Thomas W. Dolgenos, Esquire (Argued), Susan E. Affronti, Esquire, District Attorney's Office, Philadelphia, PA, for Appellants.

Cheryl J. Sturm, Esquire (Argued), Chadds Ford, PA, for Appellee.

Matthew C. Lawry, Esquire, Billy H. Nolas, Esquire, Defender Association of Philadelphia, Philadelphia, PA, for Amici Curiae–Appellee, Federal Defender Organization.

Argued Oct. 25, 2007

Before SLOVITER, CHAGARES and HARDIMAN, Circuit Judges.

Reargued Nov. 19, 2007

Before SCIRICA, Chief Judge, SLOVITER, McKEE, BARRY, AMBRO, FUENTES, SMITH, FISHER, CHAGARES, JORDAN and HARDIMAN, Circuit Judges.

OPINION OF THE COURT

PER CURIAM.

The District Court conditionally granted a writ of habeas corpus to Christopher Boyd. The Commonwealth[1] appealed, and after a three-judge panel heard argument, the Court ordered rehearing en banc. We will reverse the District Court's judgment and remand to a different district court judge for proceedings consistent with this opinion.

The facts of this case and the basis of our jurisdiction are set forth in Parts I and II of Judge Hardiman's opinion. For the reasons given in Part III of that opinion, we conclude Boyd's claim was properly exhausted and has not been procedurally defaulted. *See Cone v. Bell*, —— U.S. ——, ——, 129 S.Ct. 1769, 1781, 173 L.Ed.2d 701 (2009).

■ Furthermore, a majority of the Court finds that Boyd's claim is governed by the test for ineffective assistance of counsel enunciated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); it is not barred by *Tollett v. Henderson*, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973), or *Mabry v. Johnson*, 467 U.S. 504, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984).

■ Although the District Court correctly identified the *Strickland* test as the rule of decision, it erred in reviewing Boyd's claim de novo. As explained in Chief Judge Scirica's opinion, because the state courts adjudicated Boyd's claim on the merits, federal habeas relief is subject to the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d). Accordingly, we will remand for the District Court to apply the proper AEDPA analysis, consistent with the instructions in Chief Judge Scirica's opinion. *See* Chief Judge Scirica Op. at 335–37 & n. 7.

A further word is needed about the appropriate use of evidentiary hearings. The Magistrate Judge in this case conducted such a hearing, and both the Magistrate Judge and the District Court relied on the evidence adduced therein. Neither they, nor the parties, appear to have queried

---

1. For ease of reference, we use the term "Commonwealth" to denote Appellants Warden, SCI Waymart; the District Attorney of Philadelphia County, Pennsylvania; and the Attorney General for the Commonwealth of Pennsylvania.

whether the hearing was permissible under 28 U.S.C. § 2254(e)(2). As detailed in Chief Judge Scirica's opinion, on remand we instruct the District Court to address this question in the first instance, and to consider the evidence from the Magistrate Judge's hearing only if that hearing was consistent with AEDPA's statutory strictures.

For reasons also given by Chief Judge Scirica, we conclude the District Court improperly rejected—on a cold record-the Magistrate Judge's finding that Boyd had not demonstrated prejudice as required by *Strickland.* Although we have no doubts about the district court judge's fairness, we will remand to a different judge to ensure the appearance of impartiality. If the District Court again reaches the prejudice prong of the *Strickland* test, it should hold its own hearing (subject again to § 2254(e)(2)) if it declines to accept the Magistrate Judge's finding.

SCIRICA, Chief Judge, concurring, in which AMBRO, FUENTES and FISHER, Circuit Judges, join.

I agree with Judge Hardiman that Boyd did not procedurally default his claim. "When a state court refuses to readjudicate a claim on the ground that it has been previously determined, the court's decision does not indicate that the claim has been procedurally defaulted. To the contrary, it provides strong evidence that the claim has already been given full consideration by the state courts and thus is *ripe* for federal adjudication." *Cone v. Bell,* —— U.S. ——, ——, 129 S.Ct. 1769, 1781, 173 L.Ed.2d 701 (2009). Accordingly, I join Part III of Judge Hardiman's opinion.

In my view, however, *Tollett v. Henderson,* 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973), and *Mabry v. Johnson,* 467 U.S. 504, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984), do not dispose of this case. Instead, I believe the well-settled test for ineffective assistance of counsel set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), provides the rule of decision, as the Magistrate Judge and District Court determined. At the same time, however, I believe the District Court erred in reviewing Boyd's ineffective assistance of counsel claim under a de novo standard. Because the Pennsylvania Superior Court adjudicated Boyd's claim on the merits, habeas relief is subject to the restrictions imposed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d). Accordingly, I would reverse and remand with instructions for the District Court to apply the proper AEDPA standards.

AEDPA provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). As the Supreme Court has explained, AEDPA "place[d] a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." *Terry Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495,

146 L.Ed.2d 389 (2000) (majority opinion of O'Connor, J.). Accordingly, as a threshold matter, in order to determine whether the constraints of § 2254(d) apply to federal review of Boyd's petition, we must determine whether the state courts decided his claim "on the merits." *See Chadwick v. Janecka*, 312 F.3d 597, 605–06 (3d Cir. 2002). If the state courts decided a given claim on the merits, "our standard of review is narrow:" we may not grant the writ unless the state-court adjudication of that claim meets one of the conditions set forth in § 2254(d)(1) or (d)(2). *Id.* at 605. Conversely, "[w]e review *de novo* issues that the state court did not decide on the merits." *Bond v. Beard*, 539 F.3d 256, 263 (3d Cir.2008). The District Court concluded without elaboration that it would "review [Boyd's petition] de novo as the state courts failed to accurately construe Petitioner's claim against trial counsel." *Boyd v. Nish*, No. 06–0491, 2007 WL 403884, at *2 (E.D.Pa. Jan.31, 2007).[2]

State-court adjudication "on the merits" has been defined as follows:

A matter is "adjudicated on the merits" if there is a "decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground." … [Section] 2254(d) applies regardless of the procedures employed or the decision reached by the state court, as long as a

substantive decision *was* reached; the adequacy of the procedures and of the decision are addressed through the lens of § 2254(d), not as a threshold matter. *Teti v. Bender*, 507 F.3d 50, 56–57 (1st Cir.2007) (quoting *Sellan v. Kuhlman*, 261 F.3d 303, 311 (2d Cir.2001), and citing cases from the Fourth, Fifth, Sixth, Ninth, Tenth and Eleventh Circuits); *accord Thomas v. Horn*, 570 F.3d 105, 114–15 (3d Cir.2009); *Rompilla v. Horn*, 355 F.3d 233, 247–48 (3d Cir.2004), *rev'd on other grounds sub nom. Rompilla v. Beard*, 545 U.S. 374, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005). Our precedent "stand[s] for the proposition that, if an examination of the opinions of the state courts shows that they misunderstood the nature of a properly exhausted claim and thus failed to adjudicate that claim on the merits, the deferential standards of review in AEDPA do not apply." *Chadwick*, 312 F.3d at 606. But when the state courts have "previously considered and rejected the federal claim on the merits," the § 2254(d) standards do apply. *Siehl v. Grace*, 561 F.3d 189, 195 (3d Cir.2009).

Boyd has claimed his trial counsel was ineffective on two different grounds. The first ground, initially presented on direct appeal in Pennsylvania Superior Court, was that trial counsel allegedly failed to give Boyd sufficient advice about the sentencing guidelines to allow him to make an informed decision about whether to accept

---

**2.** The District Court found that de novo review was also proper because "the state courts never cited or described the relevant federal precedent, and thus, never reached the merits of Petitioner's Sixth Amendment claim." *Boyd*, 2007 WL 403884, at *2. The District Court erred in implying that the failure of a state court to state "the relevant federal precedent" is necessarily a failure to adjudicate a petitioner's claim on the merits. The Pennsylvania Supreme Court has made clear that the standard for ineffective assistance of counsel under Pennsylvania law—

which the state courts applied here—is the same as *Strickland's* standard, *see Commonwealth v. Tedford*, 598 Pa. 639, 960 A.2d 1, 12 (2008) (citing *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973, 975 (1987) (adopting U.S. Supreme Court's holding in *Strickland*)), so a Pennsylvania court has adjudicated a *Strickland* claim on the merits where it has applied the state-law standard to that claim. *Rompilla v. Horn*, 355 F.3d 233, 248 (3d Cir.2004), *rev'd on other grounds sub nom. Rompilla v. Beard*, 545 U.S. 374, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005).

the Commonwealth's initial plea offer. Boyd does not dispute that the Pennsylvania Superior Court recognized this claim and decided it on the merits for purposes of 28 U.S.C. § 2254(d).[3] On its way to denying this claim, the Pennsylvania Superior Court found, as a matter of fact, that Boyd's counsel "fully informed [Boyd] about the availability of the original plea offer, but [Boyd] decided to take his chances on the discretion of the court as to sentencing." Boyd contests this factual finding.

Boyd first presented the second ground for trial counsel's alleged ineffectiveness in his PCRA petition (i.e., on state collateral review), arguing that trial counsel provided ineffective assistance by rejecting the initial plea offer before discussing it with him. The PCRA Court did not recognize that Boyd's claim was different from the one he had presented on direct appeal. It believed Boyd was again asserting that "guilty plea counsel was ineffective for advising defendant to reject a negotiated plea offer of four to eight years in light of the seriousness of the crimes charged," rather than for rejecting the offer before consulting Boyd. Given this mistaken formulation, it is not surprising that the PCRA Court concluded "defendant raised the exact issue on direct appeal that he is now raising in his PCRA petition" and, accordingly, dismissed the claim as "previously litigated." The Commonwealth concedes "the PCRA court misidentified

Boyd's ineffectiveness claim." Commonwealth's Suppl. Br. 5; *see also id.* at 6 n. 3 ("[T]he PCRA court incorrectly described the ineffectiveness claim . . . and never *correctly* identifies it. . . .").

On PCRA appeal, however, the Pennsylvania Superior Court correctly identified Boyd's claim, accurately describing the question presented as whether "trial counsel's rejection of the [initial] offer before discussing it with [Boyd] rendered his assistance ineffective." The Pennsylvania Superior Court correctly contrasted this claim with Boyd's claim on direct appeal that "his trial counsel was ineffective in failing to discuss a plea agreement in which [he] would have received a sentence in the mitigated range of the sentencing guidelines." The highest state court to review Boyd's petition, therefore, did not "misunderst[and] the nature" of his PCRA claim. *Chadwick,* 312 F.3d at 606. The Pennsylvania Superior Court rejected the PCRA claim on the basis of the "previously litigated" rule,[4] but that disposition cannot mean the Pennsylvania Superior Court thought the *claim* was previously litigated, since as noted, that court, unlike the PCRA Court, correctly distinguished between the PCRA and direct-appeal claims.

Instead, the Superior Court looked back to its direct-appeal opinion and saw that it had already rejected the factual predicate of Boyd's PCRA claim. Boyd's claim that trial counsel was ineffective for rejecting

---

**3.** The Pennsylvania Superior Court expressly noted the question Boyd presented: "Where the prosecutor offered a negotiated guilty plea in the mitigated range of the guidelines, and the case against [Appellant] was so strong as to be untriable and also presented several reasons to expect a sentence in the aggravated range or above, was trial counsel ineffective in failing to discuss the relative merits of accepting the prosecution's offer with [Appellant]?"

**4.** Under Pennsylvania law, a petition for postconviction review should be dismissed insofar as the "allegation of error" has been "previously litigated." 42 Pa. Cons.Stat. Ann. § 9543(a)(3). "[A]n issue has been previously litigated if . . . the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue. . . ." *Id.* § 9544(a)(2). Part III of Judge Hardiman's opinion concludes that the "previously litigated" rule is not a procedural default rule. I agree.

an earlier plea offer before discussing it with him contains both factual and legal elements, and Boyd must establish both in order to prevail. First, he must show that, as a matter of fact, his trial counsel had rejected the initial plea offer before Boyd had an opportunity to consider it. Second, he must demonstrate that this factual state of affairs amounted legally to ineffective assistance of counsel, that is, that such behavior by Boyd's counsel was constitutionally deficient and prejudiced him.[5] The Pennsylvania Superior Court found Boyd could not establish the factual element of his claim because the court had already found on direct appeal that trial counsel "fully informed [Boyd] about the availability of the original plea offer, but [Boyd] decided to take his chances on the discretion of the court as to sentencing." Accordingly, the Pennsylvania Superior Court adjudicated Boyd's PCRA claim on the merits, rejecting it because the court had rejected its factual predicate at an earlier stage of the litigation. The Pennsylvania Superior Court therefore had no occasion to reach the legal question whether, if trial counsel had rejected the offer before consulting Boyd, such conduct would constitute ineffective assistance.

Whether the Pennsylvania Superior Court's factual determination is "unreasonable" under 28 U.S.C. § 2254(d)(2)'s deferential standard is distinct from the threshold question of whether that standard is applicable in the first place. See Teti, 507 F.3d at 57 ("[T]he adequacy of the [state-court] procedures and of the decision are addressed through the lens of § 2254(d), not as a threshold matter.").[6] The state courts' rejection of Boyd's ineffective assistance of counsel claim is entitled to AEDPA deference because it is an adjudication on the merits. The Pennsylvania Superior Court recognized the distinct nature of Boyd's PCRA claim. The Pennsylvania Superior Court disposed of Boyd's claim on factual rather than legal grounds, but this means only that it is § 2254(d)(2) that applies to federal review of the claim.[7] The Pennsylvania Superior Court relied on a finding made at a previous stage in the litigation, but this does not prevent its decision from being an adjudication on the merits. It means only that federal courts reviewing Boyd's habeas petition should examine the Superior Court's opinion on direct appeal, as well as its opinion on

5. The prejudice prong of Strickland calls for another factual determination: Would the defendant have avoided the injury of which he complains if counsel had not performed deficiently? The petitioner can prevail only if the court answers this question in the affirmative.

6. Judge Sloviter's opinion states that the Superior Court's direct-appeal opinion "was clearly based on 'an unreasonable determination of the facts in light of the evidence presented in the state court proceeding,' and [is] therefore not entitled to the deference required by AEDPA." Judge Sloviter Op. at 346 (quoting 28 U.S.C. § 2254(d)(2)). But this formulation, I believe, does not distinguish between the threshold question of whether AEDPA deference is due—that is, whether § 2254(d)'s standards apply—and the

question of whether Boyd is entitled to relief under AEDPA's standards.

7. Since the Pennsylvania Superior Court rejected the factual predicate of Boyd's PCRA ineffectiveness claim, it did not have occasion to apply either prong of the Strickland test. Accordingly, if Boyd is able to show that the state-court factual determination was "unreasonable" under § 2254(d)(2), and that his trial counsel did reject the initial plea offer before consulting him, the District Court should apply the two prongs of the Strickland test de novo. See Rompilla, 545 U.S. at 390, 125 S.Ct. 2456 (examining the prejudice prong of a Strickland claim de novo because the state courts, having unreasonably found counsel's performance adequate, never reached that issue).

collateral review, in order to determine whether the state-court adjudication of Boyd's claim was "unreasonable." [8]

Since the state courts decided both variations of Boyd's ineffective assistance of counsel claim on the merits, Boyd is eligible for relief only if he can satisfy the standards imposed by 28 U.S.C. § 2254(d). Accordingly, the District Court erred in exercising de novo review of Boyd's claim. I would reverse and remand with instructions for the District Court to apply the proper AEDPA standards. *See Terry Williams*, 529 U.S. at 402–413, 120 S.Ct. 1495 (describing the difference between § 2254(d)'s standards and de novo review).

■ In the course of this appeal, other issues have arisen that should be dealt with on remand. One issue involves the federal evidentiary hearing held by the Magistrate Judge. Although both the Magistrate Judge and District Court relied on testimony from that hearing, neither the Magistrate Judge's Report and Recommendation nor the District Court's opinion appeared to examine whether the hearing complied with AEDPA, 28 U.S.C. § 2254(e)(2). That section provides:

> If the applicant [for a writ of habeas corpus] has failed to develop the factual basis of a claim in State court proceedings, the [federal] court shall not hold an

evidentiary hearing on the claim unless the applicant shows that—

> (A) the claim relies on—
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

As Boyd does not contend that he can fulfill the conditions of either § 2254(e)(2)(A) or (B), the section's opening clause is dispositive. If Boyd "failed to develop the factual basis" of his claim in state court, then he should not receive a federal evidentiary hearing.

In construing this opening clause, the Supreme Court has stated that "[t]he purpose of the fault component of 'failed' is to ensure the prisoner undertakes his own diligent search for evidence." *Michael Williams v. Taylor*, 529 U.S. 420, 435, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000). Boyd

---

**8.** This case is distinguishable from those in which the highest state court of relevance failed to recognize the nature of the petitioner's claim and thus failed to adjudicate petitioner's claim "on the merits" for purposes of § 2254(d). When a state court erroneously believes a claim has been previously litigated, and dismisses the claim on that ground, there is no state-court decision on the merits. *See, e.g., Cone*, 129 S.Ct. at 1784 (holding that a claim had not been adjudicated on the merits where state courts had found it to have been previously litigated (and dismissed it on that ground), but in fact it had not been). The PCRA Court here made this mistake. If its decision had been the final state-court word on the matter, Boyd's PCRA claim would not

have been adjudicated on the merits, as was the case in *Cone.* But on PCRA appeal, the Pennsylvania Superior Court correctly recognized Boyd's claim and correctly found that the factual issue underlying that claim had been previously decided. When state courts correctly find that an issue has been previously litigated, the question on federal habeas review is not whether § 2254(d)'s standards apply (they do), but rather to which state-court opinion we should apply them. *Cf. Bond*, 539 F.3d at 289–90 (Where a lower state-court opinion "represents the state courts' last reasoned opinion on [the relevant issue]," we should "look through" the higher state-court opinion and apply § 2254(d)'s standards "to the highest reasoned opinion.").

argues that he was sufficiently diligent in seeking an evidentiary hearing in state court, and that § 2254(e)(2) is therefore no obstacle to the Magistrate Judge's hearing. *See id.* at 437, 120 S.Ct. 1479 ("If there has been no lack of diligence at the relevant stages in the state proceedings, the prisoner has not 'failed to develop' the facts under § 2254(e)(2)'s opening clause, and he will be excused from showing compliance with the balance of the subsection's requirements."). The *Michael Williams* Court did not exhaustively explain what a petitioner must do to be deemed "diligent" under the statute, but it did state that "[d]iligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." *Id.*

■ On remand, I would instruct the District Court to decide in the first instance whether Boyd's efforts to obtain a state-court evidentiary hearing were sufficient to allow a federal hearing. If the court finds Boyd satisfied the diligence requirements of § 2254(e)(2)'s opening clause, it may again rely on the evidence adduced in the Magistrate Judge's earlier hearing; otherwise, this evidence should be excluded.

■ The Magistrate Judge's hearing, if permissible, raises another issue. We have held that "[a] district court may not reject a finding of fact by a magistrate judge without an evidentiary hearing, where the finding is based on the credibility of a witness testifying before the magistrate judge and the finding is dispositive of an application for post-conviction relief involving the constitutional rights of a criminal defendant." *Hill v. Beyer*, 62 F.3d 474, 482 (3d Cir.1995) (citing *United States v. Raddatz*, 447 U.S. 667, 681 n. 7, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980)). This rule is grounded, at least in part, on prudential reasons. "Our judicial system affords deference to the finder of fact who hears the live testimony of witnesses because of the opportunity to judge the credibility of those witnesses." *Id.* Although Boyd had testified at the evidentiary hearing held by the Magistrate Judge that he would have accepted the initial offer had he been adequately advised by trial counsel, the Magistrate Judge concluded that was not, in fact, the case. This finding necessarily implied a determination that Boyd's testimony was not credible. Applying a de novo standard of review, the District Court, without holding a hearing of its own, rejected the Magistrate Judge's determination and found that Boyd had satisfied the prejudice prong of *Strickland. Boyd*, 2007 WL 403884, at *5. I would hold that, if the District Court again reaches the prejudice prong of the *Strickland* test after applying the deferential standards of 28 U.S.C. § 2254(d), it should hold its own evidentiary hearing if it declines to adopt the Magistrate Judge's finding.[9]

9. Such a hearing might have the additional benefit of further developing the factual record in light of the issues that have surfaced in the course of this appeal. It might also illuminate the parties' continuing factual dispute over the specific sentencing term proposed in the initial plea offer. Boyd has contended that the offer was for a term of incarceration of four to eight years, whereas the Commonwealth has maintained the offer was for a term of four to ten years. Although the District Court order conditionally granting the writ describes the term as four to ten years, its accompanying Memorandum and Order refers to both terms at different points without clarification. This factual dispute could be relevant to the determination of an appropriate remedy if the District Court reaches that issue again on remand. The details of the plea offer could also bear on the prejudice prong of the *Strickland* test insofar as the length of the proposed sentence affects the likelihood that Boyd, if properly advised, would have accepted the initial plea offer instead of taking his chances with an open plea.

The Court of Appeals for the Second Circuit reached the same conclusion on a similar set of facts. *Cullen v. United States,* 194 F.3d 401 (2d Cir.1999). Petitioner Cullen had been tried and convicted of drug offenses and sought habeas relief on the ground that his trial counsel had failed to advise him adequately with respect to a plea bargain offer that, if accepted, would have resulted in a shorter sentence. The magistrate judge found that counsel had performed deficiently and that this performance had prejudiced Cullen, noting that "Cullen testified that if [defense counsel] had discussed the sentencing guidelines he would have pleaded guilty." *Id.* at 403. The district court agreed as to the deficient-performance prong, but rejected, "without taking testimony," the magistrate judge's prejudice finding (based in part on the fact that Cullen had adamantly protested his innocence). *Id.* Accordingly, the district court denied the writ.

The Second Circuit vacated and remanded. Although the district court had characterized the issue as a matter of law, the Second Circuit noted that the prejudice question hinged on an "essentially factual determination." *Id.* at 405; *see id.* ("[T]he determination of the likelihood that Cullen would have accepted the plea bargain if he had been fully informed of its terms and accurately advised of the likely sentencing ranges under the plea bargain and upon conviction after trial was, like all predictions of what might have been, a factual issue, albeit a hypothetical one."). The district court had not simply asserted

that it disbelieved Cullen's self-serving testimony; it had pointed to other evidence, like his claims of innocence, that weighed against that testimony. Nonetheless, the Second Circuit recognized that the prejudice determination necessarily involved a credibility determination, *id.* at 407, and that pieces of evidence extrinsic to Cullen's self-serving statement, like his claims of innocence and "the disparity between the guideline range [Cullen] faced and the range as represented by defense counsel," were "factor[s] bearing upon [Cullen's] credibility." *Id.* at 408. Accordingly, under the line of precedent including the Supreme Court's decision in *United States v. Raddatz* and our decision in *Hill v. Beyer, see Cullen,* 194 F.3d at 405–07, the Second Circuit vacated the district court's judgment and remanded, so that, "if the District Court [again] declines to accept any credibility findings made based on live testimony before the Magistrate Judge," there would "be an opportunity for Cullen's credibility to be assessed after the District Court has seen and heard him testify." *Id.* at 407.

*Cullen* is instructive in another respect as well. The Second Circuit's remand order assigned the case to a different district court judge. I would do the same here. This reassignment is dictated solely by concerns about the appearance of impartiality—concerns inherent in the procedural posture of the case, as *Cullen* recognized.[10]

For these reasons, I would reverse and remand to a different district court

---

**10.** If the original district court judge were to reach the same conclusion after hearing Boyd's live testimony, those

> unaware of [the district court judge's] deserved reputation for fairness, would wonder whether the Judge had permitted h[er] prior ruling to influence h[er] second decision. There are occasions when a matter is

appropriately remanded to a different district judge not only in recognition of the difficulty that a judge might have putting aside h[er] previously expressed views, but also to preserve the appearance of justice.... [T]hat course is warranted here. *Cullen,* 194 F.3d at 408 (internal quotation marks omitted).

judge.[11]

SLOVITER, Circuit Judge, Dissenting Opinion, Concurring in the Judgment of the Court, in which Judge McKEE joins.

In reviewing Judge Hardiman's opinion, it is important to note: (1) that Judge Hardiman never denies that Boyd's counsel did not inform Boyd of the Commonwealth's plea offer before Boyd pled guilty; (2) that Judge Hardiman never denies that counsel has an obligation to directly inform a defendant of a proffered plea agreement; (3) that Judge Hardiman never flatly states that failure to advise a client of a plea offer is ineffective assistance of counsel; (4) that there is nothing in the record to support the state court's assumption (and it is nothing short of an assumption) that Boyd "knew about the initial plea offer yet decided to 'take his chances with the discretion of the court'"; and (5) that the majority of the en banc court has not adopted nor endorsed Judge Hardiman's view of the effect of *Tollett* and *Mabry*.

The principal issue raised on this appeal is whether, as the District Court found, trial counsel for the defendant Christopher Boyd was ineffective when he failed to communicate directly to Boyd a plea offer of 4 to 10 years (or 4 to 8 years) made by the Commonwealth. The Petition for a Writ of Habeas Corpus filed by Boyd, who was sentenced to 8 to 22 years, alleged that "[t]he conviction was obtained and sentence imposed in violation of the Sixth Amendment right to effective assistance of counsel at all critical stages. . . . The Petitioner alleges that trial counsel failed to communicate a favorable plea agreement before rejecting it; that trial counsel failed to discuss a favorable plea agreement before rejecting it. The Petitioner alleges he would have accepted the 4–8 year plea had it been presented to him for consideration

before the lawyer rejected it." Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 at 3, *Boyd v. Warden, SCI Waymart,* No. 06–0491 (E.D.Pa. Feb. 1, 2006).

The Magistrate Judge to whom the District Court referred the Petition for Habeas Corpus found, after an evidentiary hearing, that trial counsel "*did* in fact reject the Commonwealth's plea offer without the prior consent of Petitioner," App. at 22 (emphasis in original), although the Magistrate Judge recommended denial of the Petition. The District Court, in ruling on the Petition for Habeas Corpus, agreed, holding, based on undisputed facts: "This Court finds that trial counsel did not communicate the plea offer to Petitioner before rejecting the plea and thus failed to act as 'counsel' as guaranteed under the Sixth Amendment." App. at 11.

The Commonwealth appealed to this court and listed as one of the three issues presented: "Whether plea counsel was constitutionally ineffective for failing to convey the original plea offer directly to Boyd. . . ." Appellants' Br. at 2. In its Supplemental Brief filed at our direction after we granted en banc hearing, the Commonwealth listed as one of the issues: "[i]f trial counsel communicated the plea offer to Boyd not directly, but only through Boyd's mother, would this in itself amount to ineffective assistance of counsel?" Supp. Br. for Appellants at 31. Judge Hardiman never answers this question. To reach the answer, we must review the proceedings that have landed a young man in prison for the last seven years.

Judge Hardiman's opinion concedes that "the extensive briefing and oral argument presented to the Court en banc focused entirely on the substantive issue [i.e., whether Sciolla, Boyd's trial counsel, was

---

**11.** I express no opinion about the ultimate merits of Boyd's claim.

ineffective]." Hardiman Op. at 367.[12] Nonetheless, Judge Hardiman's opinion concludes that "the adequacy of Sciolla's representation with respect to the Commonwealth's initial guilty plea offer is immaterial," Hardiman Op. at 371, and, in so concluding substantially curtails the scope and effect of *Strickland.*

# I.

## Background

### A. *The Original Offense*

Judge Hardiman's opinion accurately describes the facts relating to the commission of the offense. Boyd did indeed commit a grievous assault on Jones, and it cannot be excused or mitigated by the fact that, as Boyd later told the police, Jones threatened that if Boyd did not pay the bet, Jones would kill Boyd's parents. App. at 167. There is no question that Boyd was appropriately charged with aggravated assault, possession of a weapon, and related offenses. It is the proceedings thereafter that are at the heart of the issue before us.

### B. *The Guilty Plea*

Boyd's parents retained attorney Guy Sciolla to represent Boyd. At all relevant times Boyd was an adult and was never held to be mentally incompetent. The Commonwealth does not dispute that there was never an issue regarding competency. The Assistant District Attorney ("ADA") assigned to the case extended a plea offer to Sciolla, which called for a term of imprisonment of four to eight (or four to ten) years. Sciolla rejected the offer, telling the ADA that it was "unacceptable." App. at 40. After rejecting the offer, Sciolla called Mrs. Boyd (Boyd's mother), told her about the plea offer, and stated that he had already rejected the offer.[13] When asked at the hearing before the Magistrate Judge whether he had already rejected the plea bargain offer prior to the conversation with Mrs. Boyd, Sciolla testified, "I had." App. at 40; *see also* App. at 35.

It is undisputed that Sciolla did not communicate the offer directly to Boyd. App. at 35.[14] Judge Hardiman states that "the state court found that Sciolla informed Boyd of the initial plea offer and Boyd chose not to accept it." Hardiman Op. at 378. He never acknowledges that the state court was wrong-and for Boyd disastrously wrong. When asked under oath by Boyd's federal habeas counsel if Sciolla *ever* communicated the plea offer directly to defendant Boyd, Sciolla said, "[n]o." App. at 38.[15] When Sciolla was asked

12. Judge Hardiman spends much of his opinion on the issue that he categorizes as the "procedural issue," whether Boyd's claims are unexhausted and procedurally defaulted. Whether or not the discussion of exhaustion and procedural default in Judge Hardiman's opinion is correct, I do not propose to comment thereon in this dissent.

13. While under oath, Sciolla was asked, "During the conversation that you had with Mrs. Boyd, did you at any time indicate that you had rejected the offer ...?" Sciolla answered, "I did...." App. at 35.

14. At oral argument, the Commonwealth conceded that there was no dispute that trial counsel never directly communicated the plea bargain offer to Boyd, once again demonstrating the factual error stated by the Superior Court.

15. Q. ... [F]irst of all, *at the time you made the conversation to Nancy Boyd to communicate that there had been an offer of four to eight years, had you already rejected the offer?*

 A. *I had.* I had pretty much told the assistant district attorney that I thought that was, you know, way over the top; and it wasn't as if that, you know, that offer was withdrawn, but I had pretty much told, I believe it was Jason Bologna, who was the then assistant D.A. prosecuting this case, that I thought that was unacceptable. And

under oath by the Magistrate Judge whether he "ever discuss [ed] the four to eight [year plea offer] with [Boyd]?," Sciol-

la said that he did not; he only told Mrs. Boyd about the offer. App. at 46.[16] Boyd

I communicated that to Ms. Boyd—Mrs. Boyd.

App. at 40 (emphasis added). Sciolla's failure to discuss the potential sentence with Boyd appears in Sciolla's other testimony:

Q. And did you go over in detail the sentencing guidelines—
A. No, I—
Q. —with Christopher Boyd—
A. —I never—
Q. —before that—before you made that recommendation?
A. No, I would—I—I never talked to them about the sentencing guidelines.

App. at 40–41. And yet again:

Q. And during the time that you were conveying to Nancy Boyd that the Commonwealth had made an offer of four to eight years and you had rejected it as unacceptable, did you also tell Nancy Boyd that Christopher might get as much as 22 years?
A. No. No, I never would have thought that was possible.
Q. And did you ever tell Christopher Boyd that he might get as much as 22 years?
A. Absolutely not.

App. at 41.

The same point was reiterated shortly thereafter:

Q. During the entire time that you were representing Chris Boyd, up until the point where he entered a guilty plea in this case, is it a correct summary of your testimony that you had never discussed Pennsylvania's Sentencing Guidelines with Christopher Boyd?
A. Yes, that is correct.
Q. And is it also correct that you had never told Mr. Boyd that he could get much more than four to eight years if he was convicted?
A. I don't believe I ever said that he could get more, I—I said I wouldn't know what the actual sentence would be, but we know that four to eight, I never saw more than four to eight coming at him, so my hope was that we could get below that based on my strategy.
Q. But the information that Mr. Boyd had in his decision-making process was four to eight years is pretty much what he could expect?
A. To the extent he participated—
Q. The maximum?

A.—in the decision-making process.
Q. Okay.
A. And I'm not even sure he did—
Q. Okay.
A.—participate in that.
. . .
THE COURT: Just one thing, Mr. Sciolla. You say you're not sure that he participated. Did you ever discuss the four to eight with him?
THE WITNESS: Only through his mom.
THE COURT: His mom.
THE WITNESS: Yeah.

App. at 45–46.

Later in the hearing Boyd himself testified as follows:

Q. At some point, did you learn that the Commonwealth had made an offer of four to eight years to you?
A. Yes.
Q. And how did you find that out?
A. Through my mother.
Q. And how old were you, do you recall when this offer was conveyed to you?
A. I was 20.
Q. Okay. Did Mr. Sciolla at any time discuss with you directly, you personally, that the Commonwealth had made an offer of four to eight years to you?
A. No, never.
Q. Did Mr. Sciolla tell you at any time before you pled guilty that Pennsylvania had sentencing guidelines?
A. No, never.
Q. Did Mr. Sciolla tell you before you pled guilty that you could get much more than four to eight years in this case?
A. No.
Q. Did Mr. Sciolla at any time ask you personally whether you wanted to accept the four-to-eight-year offer from the Commonwealth?
A. No.
Q. If Mr. Sciolla had explained to you that there were sentencing guidelines in Pennsylvania and that you could get much more than four to eight years if you were convicted, what would you have done regarding the four-to-eight-year plea offer?
A. I would have accepted the offer.

App. at 60–61.

16. Despite answering "no" to the question whether he ever told Boyd about the plea

then testified under oath that Sciolla at no time discussed with him directly and personally that the Commonwealth had made an offer of four to eight (or four to ten) years. App. at 60.

There is no support in the record for the Commonwealth's statement that "[t]he offer was discussed with Boyd directly at several points later in the proceedings." Appellants' Br. at 7. The only citation to the record that bears on this statement is the colloquy referred to in footnote 4.

In addition, Sciolla did not discuss with Boyd the statutory maximum sentence that he could receive. Sciolla did not discuss with Boyd or the Boyd family the Pennsylvania Sentencing Guidelines, including possible sentencing enhancements and aggravating factors. He never told Boyd that he could receive a sentence as high as twenty-five years imprisonment, which was the statutory maximum. Sciolla did not counsel Boyd about the plea bargain offer, statutory maximum penalty, sentencing guidelines, and how those factors should impact Boyd's decision whether to accept the plea bargain, enter an open plea, or go to trial. In fact, what Sciolla did tell Boyd was that he could receive a sentence of four to eight years imprisonment. Sciolla did not tell Boyd that he could get more than four to eight years imprisonment. Sciolla also testified that he is "not even sure [Boyd] did" participate in the plea decision, but to the extent that Boyd did participate, the only information he had was that he could get

four to eight years imprisonment. App. at 46.

The Commonwealth states the plea agreement remained open, a statement which it has not supported by any written communication by it nor by any affidavit by the prosecutor.[17] Sciolla testified that he did not know if it was still an open offer after he had rejected it. Judge Hardiman's opinion states there is a dispute regarding whether the offer remained open after Sciolla rejected it. Hardiman Op. at 365 n. 28. Even if the Commonwealth had been willing to re-extend the offer after Sciolla rejected it but before the guilty plea hearing, Boyd did not know it because Sciolla never told him and there was no mention of an outstanding offer at the guilty plea hearing or sentencing. The reason it is irrelevant whether the offer was still technically open is because it was never discussed with Boyd. The Commonwealth does not argue otherwise.

On October 29, 2001, following Sciolla's advice, Boyd entered an open guilty plea to aggravated assault and possession of an instrument of crime. The Commonwealth agreed to enter a *nolle prosequi* to the other charged offenses. At the plea colloquy, the trial court asked Boyd if he had a chance to talk to Sciolla about whether he wanted to plead guilty, and Boyd said that he had. The court did not tell Boyd, as it likely had no reason to know, that the Commonwealth had made a plea offer to Boyd, nor did it comment on whether any such offer was still open. Rather, the court informed Boyd that "[t]here is no

---

bargain offer, Sciolla then stated that "[t]here were moments when I sat with Chris and I did repeat the offer to him, but it would have been after—way after the fact...." App. at 38. It is not clear when that would have occurred, if it did, or what Sciolla meant by that statement. Still, there are three separate times where the record evidence supports the conclusion that Sciolla *never*—not even prior

to the open plea—discussed the plea bargain offer directly with Boyd. *See* App. at 38 (lines 14–18), 46 (lines 18–23), 60 (lines 12–15).

17. At the Magistrate Judge's hearing Sciolla testified that "I don't believe [the 4–8 year offer] was ever off the table," App. at 40, but there is no record corroboration of a continuing offer by the Commonwealth.

plea agreement in this case...." App. at 159. The court informed Boyd that the statutory maximum sentence was twenty-five years. The court did not inform Boyd before the guilty plea what the sentencing guidelines prescribed for his charged offenses, nor did the court explain the applicability of aggravating circumstances to Boyd's case. The court never asked Boyd whether Sciolla had explained to him the potential statutory maximum sentence, the sentencing guidelines, or the concept of aggravating circumstances. Likewise, the court never asked Sciolla whether he had counseled Boyd in those respects. Sciolla testified that even though Boyd walked through the plea colloquy, he did not seem to fully grasp the seriousness of the potential sentence. App. at 37.

## C. *Sentencing*

The trial court applied the aggravated sentencing guideline range (applicable when an offense involved the use of a deadly weapon, in this case a baseball bat). The court sentenced Boyd to a sentence of 84–240 months imprisonment on the assault charge and 12–24 months on the weapon possession charge, to be served consecutively. The resulting sentence was 96–264 months, or eight to twenty-two years imprisonment. This must be compared to the 48–96 [or 48–120 months] months sentence had the plea offer been accepted.

## II.

### Procedural History

Boyd timely filed a direct appeal in the Pennsylvania Superior Court, alleging ineffective assistance of counsel. Boyd was not represented by Sciolla on that appeal. In the direct appeal to the Superior Court, Boyd attached an affidavit to appellate counsel's brief, in which he stated: "[Sciolla] did not discuss the offer directly with me on that date or at any other time." App. at 116, ¶ 3.[18] The brief also raised arguments regarding Sciolla's failure to tell Boyd about the sentencing guidelines and statutory maximum, as well as his failure to counsel Boyd in any meaningful way about what his options were with respect to the guilty plea. App. at 113 (arguing that a hearing was necessary to determine "why [Sciolla] elected not to discuss [Boyd's] potential sentence under the Guidelines, and why trial counsel for no apparent rational reason chose to advise [Boyd] not to take the D.A.'s offer

---

18. The affidavit, in relevant part, reads as follows:

I, CHRISTOPHER BOYD, do hereby declare and verify as follows:

1. I was charged with aggravated assault and related offenses arising from an incident on July 21, 2000. I am 21 years old, and my date of birth is 6–24–80. I had no prior arrests, adult or juvenile, and no prior contact of any kind with the criminal justice system.

2. On July 28, 2000, I met with attorney Guy Sciolla at my parents' house, where I also resided. Mr. Sciolla is a close friend of my mother's niece by marriage, Patty Smith. He said that he would represent me in my criminal case.

3. On January 4, 2001, Mr. Sciolla spoke to my mother on the phone and asked her to tell me that the D.A.'s Office had offered me a plea of four to eight years in prison if I would plead guilty. He told me, through my mother, that the offer was "unacceptable." He did not discuss the offer directly with me on that date or at any other time.

4. Except for this case, my parents and I are unfamiliar with the criminal justice system and we were entirely dependent upon my attorney's advice. He did not explain the Sentencing Guidelines to us.

5. At the sentencing hearing on December 18, 2001, I was sentenced to serve eight to twenty-two years in prison. I am presently incarcerated at SCI–Waymart.

6. I now understand the Sentencing Guidelines which apply to my case. At Offense Gravity Score of 11, where a deadly weapon is used, the standard range sentence is 54–72 months, plus or minus 12.

App. at 116.

that was the best chance he had at reduced jail time.").

In an opinion dated November 18, 2002, on Boyd's direct appeal, the Superior Court affirmed Boyd's judgment of sentence. Although the Superior Court acknowledged the existence of Boyd's affidavit that was attached to Boyd's appellate brief, it did not refer to the portion of Boyd's affidavit quoted above. The Court found that Sciolla communicated the plea offer to Boyd and "fully informed [Boyd] about the availability of the original plea offer." App. at 85. This erroneous statement misinterprets or misstates the record.

In his brief to the Superior Court, Boyd had cited *Commonwealth v. Napper*, 254 Pa.Super. 54, 385 A.2d 521 (1978), in support of his claim for ineffective assistance of counsel. Napper had been convicted of two counts of aggravated robbery and sentenced to two consecutive terms of five to twenty years imprisonment. The trial court denied Napper's petition for post-conviction relief that was based upon counsel's ineffectiveness in failing to fully advise Napper of the availability of a plea bargain offer. The Superior Court reversed, reasoning that counsel had failed "to make clear [to his client] 'the risks, hazards or prospects of the case.'" *Id.* at 524.

In its opinion on Boyd's direct appeal, the Superior Court recognized that in *Napper*, counsel "all but admitted that he had been ineffective in failing to advise [Napper] fully on the availability of a plea bargain...." App. at 85. The Court sought to distinguish *Napper* by the statement, amazing under the circumstances, that Boyd's "counsel informed him of the existence of the first plea bargain and the recommended sentence." App. at 85. That conclusion was patently erroneous in light of Boyd's affidavit stating that counsel never informed him directly of the plea bargain offer and in light of the legal precedent that the Superior Court cited in the very decision denying Boyd's claim. Instead, the Superior Court concluded that Sciolla was not ineffective, and that Boyd's claims were "without arguable merit." App. at 88. Boyd appealed to the Pennsylvania Supreme Court, which denied allocatur on February 17, 2004.

On October 19, 2004, Boyd filed for relief under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. Cons.Stat. § 9541, claiming that trial counsel rendered ineffective assistance of counsel by failing to consult with Boyd about the Commonwealth's plea offer. The Court of Common Pleas (the PCRA court) dismissed the petition on February 7, 2005.

The court rejected Boyd's claim that "guilty plea counsel was ineffective for advising defendant to reject a negotiated plea offer of four to eight years in light of the seriousness of the crimes charged" and that "appellate counsel was constitutionally ineffective for failing to make the foregoing argument on direct appeal." App. at 76. The PCRA court concluded that this argument had previously been litigated because, on direct appeal, the Superior Court held that Boyd's guilty plea was entered knowingly, intelligently, and voluntarily. App. at 76.[19] The PCRA court then stated that, assuming arguendo that the claim had not been previously litigated, the claim was without merit because there is no absolute right to withdraw a plea. The court stated that "[t]o withdraw a plea after sentencing, a defendant must make a showing of prejudice amounting to mani-

---

**19.** The voluntariness of a plea, vel non, is distinct from the issue of counsel's ineffectiveness for failing to provide adequate counseling. *Cf. United States v. Day*, 969 F.2d 39, 45 (3d Cir.1992) ("[T]he Sixth Amendment right to effective assistance of counsel guarantees more than the Fifth Amendment right to a fair trial.").

fest injustice[ ] ... [which] would involve a plea which was entered into involuntarily, unknowingly, or unintelligently." App. at 77 (citations omitted). Significantly, even the alternative holding of the PCRA court does not discuss Boyd's claim of ineffective assistance of counsel nor the prejudice that resulted therefrom.

On November 23, 2005, the Superior Court affirmed the denial of the PCRA petition. The Superior Court determined that Boyd's claim was unreviewable based upon Pennsylvania's "previous litigation rule" because Boyd had already raised the issue on direct appeal. The Superior Court's opinion on appeal from the PCRA court's dismissal of Boyd's PCRA petition never discussed the merits of Boyd's ineffective assistance of counsel claim and, obviously, never discussed whether there was any prejudice resulting therefrom. It follows that the only state court opinion of relevance for purposes of AEDPA is the Superior Court opinion of November 18, 2002, an opinion, as noted above, that was clearly based on "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding," and therefore not entitled to the deference required by AEDPA. *See* 28 U.S.C. § 2254(d)(2).

Boyd turned to the federal court, having exhausted his state court options. He filed a petition for habeas corpus, pursuant to 28 U.S.C. § 2254, in the United States District Court for the Eastern District of Pennsylvania. The District Court referred the case to the Magistrate Judge who held the first, and only, evidentiary hearing on Boyd's claim of ineffective assistance of counsel. The Magistrate Judge heard the testimony of Boyd, Sciolla, and his direct appeal counsel. Because of its importance to the issue on appeal, I repeat here the Magistrate Judge's finding of fact: "I do find that Sciolla *did* in fact reject the

Commonwealth's plea offer without the prior consent of Petitioner...." App. at 22 (emphasis in original). The Magistrate Judge concluded that Boyd's claim was not procedurally defaulted, but he ultimately recommended denying the petition on the merits.

The District Court did not adopt the Magistrate Judge's Report and Recommendation although the District Court also made the same relevant factual finding from the undisputed facts on the record that "trial counsel did not communicate the plea offer to Petitioner before rejecting the plea." *Boyd v. Nish*, No. 06–0491, 2007 WL 403884, at *4 (E.D.Pa. Jan. 31, 2007). In addition to agreeing that Boyd's claim was not procedurally defaulted because, under the facts of this case, the previous litigation doctrine is not a state rule of procedure, *id.* at *3, the District Court reviewed Boyd's claims de novo. It did so because the state courts "failed to accurately construe" Boyd's claims and did not cite "relevant federal precedent." *Id.* at *2. The District Court concluded that trial counsel's failure to communicate the Commonwealth's plea offer to Boyd constituted a " 'gross deviation from accepted professional standards,' " and thus constituted failure to act as counsel under the Sixth Amendment. *Id.* at *4 (citing *United States ex rel. Caruso v. Zelinsky*, 689 F.2d 435, 438 (3d Cir.1982)). The Court also concluded that Boyd had demonstrated prejudice because he testified he would have accepted the Commonwealth's plea offer, whereas the sentence he received was significantly greater than the plea offer terms. *Id.* at *5.

The District Court entered an order conditionally granting Boyd's petition for habeas corpus on January 31, 2007. Nonetheless, Boyd is currently serving a sentence of eight to twenty-two years imprisonment in a state correctional facility.[20]

20. After the District Court order directing

the Commonwealth to extend its plea offer

He has already served more than seven years.

## III.

## Discussion

### A. *The Guilty Plea*

Judge Hardiman's opinion would decide this case primarily on the premise that Boyd has conceded his entire claim of ineffective assistance of counsel because he agreed at sentencing that his guilty plea was knowing, voluntary, and intelligent, Hardiman Op. at 372–73, and has never receded from that position. Quoting from *Mabry v. Johnson*, 467 U.S. 504, 508, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984), Judge Hardiman's opinion states: "It is well settled that a voluntary and intelligent plea of guilty made by an accused person, *who has been advised by competent counsel*, may not be collaterally attacked." Hardiman Op. at 372 (emphasis added). Of course, the issue in this case is Boyd's claim that he was not advised by competent counsel. Furthermore, in neither *Mabry* nor *Tollett* was there any allegation made that counsel had performed in an ineffective manner.

In *Tollett v. Henderson*, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973), a state prisoner who had pled guilty to murder twenty-five years earlier sought a writ of habeas corpus on the ground that the grand jury that indicted him excluded African Americans, an exclusion that had already been declared unconstitutional. *Id.* at 259, 261, 93 S.Ct. 1602. Instead of affirming the decision of the lower courts directing Tollett's release, the Court remanded, holding that "respondent must not only establish the unconstitutional discrimination in selection of grand jurors, he must also establish that his attorney's advice to plead guilty without having made inquiry into the composition of the grand jury rendered that advice outside the 'range of competence demanded of attorneys.'" *Id.* at 268, 93 S.Ct. 1602.

*Tollett* is irrelevant to the issue before us. Tollett's challenge to his guilty plea was directed to the state's right to convict a defendant who was indicted by an unconstitutionally selected grand jury. If Tollett's challenge was successful, as it was in the Court of Appeals, he would have been entitled to release and a new trial following his indictment by a properly constituted grand jury. That was the relief directed by the Sixth Circuit, *see Henderson v. Tollett*, 459 F.2d 237, 243 (6th Cir.1972), and which the Supreme Court modified by remanding for further findings.

That is a far cry from what Boyd has been contending and what he seeks. Boyd does not claim he should be exculpated because of some constitutional violation by the state. We have seen such cases when appellants or petitioners allege a *Miranda* violation, a *Brady* violation, or a *Bruton* violation. In contrast, Boyd admits that he committed the assault for which he was convicted. He does not argue that his conviction should be overturned because of an antecedent constitutional violation. His current counsel forthrightly conceded before this court that Boyd was guilty, and knowingly and voluntarily pleaded guilty to the assault. His claim goes not to his guilty plea but to his sentence.

once again, the District Attorney, by letter dated August 22, 2007, wrote to Boyd that it "formally presents a plea offer in the above referenced case of four to ten years of incarceration in a state correctional institution." Response to Application for Unconditional Release, Exhibit A, *Boyd v. Warden, SCI Way-* *mart*, No. 06–0491 (E.D.Pa. Aug. 22, 2007). The letter further states that "this offer is conditional on the outcome of the pending appeal from Judge Tucker's order granting habeas relief in this case." The appeal has remained pending for almost two years since that letter; Boyd remains in jail.

Boyd does not challenge his factual guilt. He does not wish to withdraw his guilty plea and stand trial; he seeks the more favorable sentence contained in the initial plea offer. Because Boyd does not contest his guilt, but only his sentence, his guilty plea does not render irrelevant—and thus does not bar—his claim.

In a case subsequent to *Tollett*, the Supreme Court stated that "[n]either *Tollett v. Henderson*, nor our earlier cases on which it relied, stand for the proposition that [valid] counseled guilty pleas inevitably 'waive' all antecedent constitutional violations.... [I]n *Tollett* we emphasized that waiver was not the basic ingredient of this line of cases." *Menna v. New York*, 423 U.S. 61, 63 n. 2, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975) (per curiam) (internal citations omitted). Instead, "[t]he point of these cases is that a counseled plea of guilty is an admission of factual guilt so reliable that, when voluntary and intelligent, it *quite validly* removes *the issue of factual guilt* from the case." *Id.* (second emphasis added). The Supreme Court's own words are a more effective response to the reliance on *Tollett* in Judge Hardiman's opinion than any I could devise.

Must a defendant lie about his guilt in order that he may raise the issue that his counsel was ineffective in failing to advise him of the prosecutor's proposed plea agreement?

In contrast, *Mabry* did involve a challenge to the defendant's sentence imposed after a plea bargain. 467 U.S. at 505–06, 104 S.Ct. 2543. In *Mabry*, defendant/respondent sought habeas corpus to collaterally attack a second plea bargain on the ground that it was unfair for the prosecutor to have withdrawn a more favorable plea bargain. The Supreme Court rejected that argument. The critical distinction between Boyd's case and Mabry's, and which is not noted by Judge Hardiman, is that in *Mabry*, the "[r]espondent [did] not challenge the District Court's finding that he pleaded guilty with the advice of competent counsel and with full awareness of the consequences." *Id.* at 510, 104 S.Ct. 2543. Whatever may be the similarities in the facts between this case and *Mabry*, these factual similarities are irrelevant as the respondent in *Mabry*, unlike Boyd, chose not to contest the conduct of his attorney.

Judge Hardiman's opinion is so focused on the seemingly talismanic properties of the phrase "knowing, intelligent, and voluntary" that it is unable to see the additional requirement of competent counsel in *Tollett*, or that different iterations of the same test have been used by the Supreme Court. In *Tollett* itself, Chief Justice Rehnquist (then Justice Rehnquist) quoted from the Supreme Court's earlier decision in *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), where the Court stated that in reviewing claims of ineffectiveness of counsel, the focus is " 'not on whether a court would retrospectively consider counsel's advice to be right or wrong, but on whether that advice was within the range of competence demanded of attorneys in criminal cases.' " *Tollett*, 411 U.S. at 264, 93 S.Ct. 1602 (quoting *McMann*, 397 U.S. at 771, 90 S.Ct. 1441). *See also Tollett*, 411 U.S. at 267, 93 S.Ct. 1602 ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*.").

The requirement of competent counsel, not surprisingly, is widely reiterated in

opinions of the various courts of appeals. *See, e.g., Acha v. United States,* 910 F.2d 28, 30 (1st Cir.1990) ("Moreover, a guilty plea does not preclude a defendant from raising a claim that ineffective assistance of counsel rendered the guilty plea itself unintelligent and invalid.") (citations omitted); *United States v. Arteca,* 411 F.3d 315, 320 (2d Cir.2005) ("Ineffective assistance of counsel during plea negotiations can invalidate a guilty plea and make granting withdrawal appropriate, to the extent that the counsel's deficient performance undermines the voluntary and intelligent nature of defendant's decision to plead guilty.") (citations omitted); *Hammond v. United States,* 528 F.2d 15, 18 (4th Cir.1975) ("If counsel was ineffective, it follows that Hammond's pleas were involuntary. The *Brady* trilogy ... makes it perfectly plain that the *sine qua non* to a voluntary plea of guilty is the assistance of counsel within the range of competence required of attorneys representing defendants in criminal cases.") (quotations and citations omitted); *United States v. Glinsey,* 209 F.3d 386, 392 (5th Cir.2000) ("A voluntary guilty plea waives all nonjurisdictional defects in the proceedings against the defendant. This includes claims of ineffective assistance of counsel except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary.") (citation omitted); *United States v. Brown,* 870 F.2d 1354, 1359 (7th Cir.1989) ("Brown does not claim that he received ineffective assistance of counsel, which would be a valid basis for claiming that his guilty plea was not knowing and voluntary.") (citation omitted); *Thomas v. Lockhart,* 738 F.2d 304, 306 (8th Cir.1984) ("We agree with the District Court that Thomas did not receive effective assistance of counsel; consequently he did not make a voluntary, knowing, and intelligent guilty plea."); *Langford v. Day,* 110 F.3d 1380, 1386 (9th Cir.1996) ("The fact that overshadows this case is that Langford strong-

ly and repeatedly insisted on pleading guilty and seeking the death penalty. That fact does not ... mean that Langford loses his right to effective assistance of counsel; his plea must be not only voluntary but intelligent, and counsel's advice enters into the determination of intelligence. Counsel's advice must be within the range of competence demanded of attorneys in criminal cases.") (quotation and citation omitted); *Maldonado v. Winans,* 728 F.2d 438, 439 (10th Cir.1984) (per curiam) ("[E]ffective assistance of counsel within the range of competence required of attorneys representing defendants in criminal cases is indispensable to a voluntary guilty plea.") (quotation omitted); *Scott v. Wainwright,* 698 F.2d 427, 429 (11th Cir.1983) ("[A] guilty plea cannot have been knowing and voluntary ... if a defendant does not receive reasonably effective assistance of counsel in connection with the decision to plead guilty, because the plea does not then represent an informed choice.") (citation omitted); *In re Sealed Case,* 488 F.3d 1011, 1015 (D.C.Cir.2007) ("It is well-established that the validity of a guilty plea depends on whether the plea represents a voluntary and intelligent choice, and that the voluntariness of the plea depends on whether counsel's advice satisfies the Sixth Amendment guarantee of effective assistance.") (quotation omitted).

This court has also endorsed that view. *See, e.g., Siers v. Ryan,* 773 F.2d 37, 42 (3d Cir.1985). We cannot avoid examining whether Boyd received the effective assistance of counsel when making his guilty plea.

**B.   *Ineffective Assistance of Counsel***

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. "An accused's right to

be represented by counsel is a fundamental component of our criminal justice system." *United States v. Cronic,* 466 U.S. 648, 653, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). Assistance of counsel is fundamental because "[counsel] are the means through which" the accused's other rights are guaranteed. *Id.* "Of all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive for it affects his ability to assert any other rights he may have." *Id.* at 654, 104 S.Ct. 2039 (quotation omitted).

The right to counsel means " 'the right to the effective assistance of counsel.' " *Id.* (quoting *McMann,* 397 U.S. at 771 n. 14, 90 S.Ct. 1441). That is because the text of the Sixth Amendment itself suggests that the accused must receive "Assistance," and that assistance must be "for his defence." *Id.* The Supreme Court has thus stated that if counsel does not provide "actual 'Assistance,' " it is a violation of the guarantee provided by the Sixth Amendment. *Id.* Otherwise, the requirement of counsel would be a mere "sham," meaning nothing more than formal compliance with the Constitution. *Id.* (citation and internal quotations omitted).

The right to effective assistance of counsel applies to an individual pleading guilty, just as it would apply to an individual electing to stand trial. *See Von Moltke v. Gillies,* 332 U.S. 708, 721, 68 S.Ct. 316, 92 L.Ed. 309 (1948). The decision whether to plead guilty is a fundamental decision in a criminal case. *Jones v. Barnes,* 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983).

### 1. *Trial Counsel's Performance*

Analysis of the merits of Boyd's claim of ineffective assistance of counsel requires application of the familiar two-prong test enunciated by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The first prong entails a determination whether trial counsel's performance was deficient when measured by an objective reasonableness standard. *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. Second, if counsel's performance was deficient, it is necessary to consider whether the deficient performance prejudiced the defense. *Id.*

In *Hill v. Lockhart,* 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), the Supreme Court held that "the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." The Court explained that "[i]n the context of guilty pleas, the first half of the *Strickland v. Washington* test is nothing more than a restatement of the standard of attorney competence already set forth in *Tollett v. Henderson* ... and *McMann v. Richardson* ...." *Id.* at 58–59, 106 S.Ct. 366. The *McMann* standard requires that counsel's advice in connection with a guilty plea be " 'within the range of competence demanded of attorneys in criminal cases.' " *Id.* at 56, 106 S.Ct. 366 (quoting *McMann,* 397 U.S. at 771, 90 S.Ct. 1441). In short, counsel's performance in connection with a guilty plea must meet standards of objective reasonableness. *Id.* at 57, 106 S.Ct. 366.[21]

**21.** I note briefly that, while we would normally be required to defer to the findings of a state court on a factual issue, such deference is not required here, as the state court's finding that Boyd's affidavit admitted he had been informed by trial counsel of the initial plea "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28

U.S.C. § 2254(d)(2). The finding was unreasonable because Boyd's affidavit, reproduced in full in note 7, stated that he had never personally been informed of the plea offer.

Although I agree with Chief Judge Scirica that, under AEDPA, the factual finding of the Superior Court on direct appeal is the type of state court factual finding to which a federal court must show deference, I note that such

It is well-established Supreme Court precedent that an accused individual has the ultimate authority to decide whether to plead guilty and whether or not to accept a plea offer extended by the prosecution. *See Jones,* 463 U.S. at 751, 103 S.Ct. 3308 (emphasizing that the defendant has the ultimate authority to make fundamental decisions regarding the case, including whether to plead guilty); *Faretta v. California,* 422 U.S. 806, 819, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (explaining that the Sixth Amendment grants to accused the personal right to make his defense); *Von Moltke,* 332 U.S. at 721, 68 S.Ct. 316 (stating that the accused must decide whether to plead guilty); *see also Strickland,* 466 U.S. at 688, 104 S.Ct. 2052 (noting that counsel has "particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution").

Because there are weighty consequences at stake, the decision whether to plead guilty is an intensely personal one that may be made only by the defendant. *See Gov't of Virgin Islands v. Weatherwax,* 77 F.3d 1425, 1435 (3d Cir.1996) (stating that the decisions regarding the plea process "ultimately must be made by the defendant [himself]"); *People v. Whitfield,* 40 Ill.2d 308, 239 N.E.2d 850, 852 (1968) (concluding that the right to accept state's plea offer belonged to defendant, not to counsel or defendant's mother). There could be an exception to that rule if an individual is deemed incompetent or a minor, neither of which is at issue here.

The Commonwealth seeks to bypass the uniform authority adhering to the rule set forth above by referring to Sciolla's difficulty communicating with Boyd and his subjective good intentions to use Boyd's mother as a "translator." [22]  A review of the case law reveals no "communication problems" exception to the constitutional rule that the defendant must make the decision whether to plead guilty following direct consultation with counsel, and the Commonwealth has cited no such case.

The defendant's right to make fundamental decisions affecting the "objectives of the representation" is also well-established in this circuit. *See, e.g., Weatherwax,* 77 F.3d at 1435 (stating that "fundamental" decisions, like the decision whether to plead guilty, relate directly to the objectives of representation and thus must be made by the defendant himself) (citing Model Rules of Prof'l Conduct R. 1.2(a) (1994)). *See also Sistrunk v. Vaughn,* 96 F.3d 666, 670 (3d Cir.1996) (explaining that the decision whether to plead guilty is a fundamental decision reserved for the defendant himself to make).

In *United States ex rel. Caruso v. Zelinsky,* 689 F.2d 435, 436 (3d Cir.1982), defendant Caruso was convicted of murder following a trial, and was sentenced to a term of life imprisonment. When he later discovered that trial counsel failed to advise him that the prosecutor had offered a plea

---

deference is due only when the finding is not unreasonable. Thus notwithstanding note 5 in Chief Judge Scirica's opinion, I do distinguish between the question whether deference is due and whether deference is due in this case. However, I am also convinced that, given the unreasonableness of the state court factual finding in this case, no deference is due. My opinion is therefore focused on the merits of Boyd's claim.

**22.** Such a communication may well violate Rule 1.6 of Pennsylvania's Rules of Professional Conduct, which provides that "[a] lawyer shall not reveal information relating to representation of a client unless the client consents after consultation. . . ." *See* Pa. Rules of Prof'l Conduct R. 1.6 (Confidentiality of Information) (2000).

bargain if he agreed to plead guilty, he filed a petition for a writ of habeas corpus based upon ineffective assistance of counsel. The district court granted the writ. On review, we agreed with the district court's conclusion that the failure of counsel to communicate to Caruso the prosecutor's plea bargain offer was a violation of his Sixth Amendment right to effective assistance of counsel. We stated that "[t]he decision to reject a plea bargain offer ... is a decision for the accused to make." *Id.* at 438. We explained that the right to counsel attaches during the guilty plea process because the right to counsel attaches at all " 'critical stages' of the criminal process," and the guilty plea stage is such a "critical stage." *Id.* (citation omitted). We also stated that "[i]t would seem that, in the ordinary case, a failure of counsel to advise his client of a plea bargain would constitute a gross deviation from accepted professional standards." *Id.*[23]

Other courts of appeals have held the same. In *United States v. Blaylock,* 20 F.3d 1458, 1465 (9th Cir.1994), the Court of Appeals for the Ninth Circuit collected cases from five other circuits agreeing that defense counsel's failure to communicate to the accused the existence of a plea bargain offer, *as well as the failure to advise the client of the available options and consequences of such an offer,* constitutes ineffective assistance of counsel.

In Boyd's case, Sciolla provided ineffective assistance of counsel in three ways. First, there is no dispute that Sciolla did not communicate to Boyd directly the Commonwealth's plea offer. Because a defendant's decisions regarding a guilty plea are inherently personal ones, it was a gross deviation from accepted professional standards for counsel to have communicat-

ed with Boyd's mother, rather than Boyd. *See Caruso,* 689 F.2d at 438.

Second, consultation with Mrs. Boyd would not excuse counsel's ineffectiveness because the duty of effective representation is one owed directly to the accused, not the accused's family. If counsel had concerns about Boyd's competency, it would have been prudent to request a competency evaluation. That duty cannot be excused based upon after-the-fact arguments about communication difficulties.

Third, counsel did not even communicate the offer to Mrs. Boyd until after he rejected it. Once counsel rejected the offer, he reduced the spectrum of possibilities available to Boyd. The act of rejecting the offer before communicating it to the defendant is constitutionally deficient because the case law clearly requires that such a fundamental decision must be made by the defendant. *See Jones,* 463 U.S. at 751, 103 S.Ct. 3308.

Each one of those actions would be enough to find that counsel's performance failed to meet constitutional standards. But here, the constitutional ineffectiveness runs even deeper. Specifically, Sciolla never counseled Boyd in connection with the guilty plea; he never informed Boyd of his potential sentencing exposure under the statute and the sentencing guidelines, and he never gave Boyd meaningful advice about the pros and cons of each option— the plea bargain offer, the open guilty plea, or the trial.

We have held that counsel must reasonably inform a defendant regarding his potential sentencing exposure and the various options a defendant faces in the plea bargaining stage of a criminal case. In *United States v. Day,* 969 F.2d 39, 40 (3d

---

**23.** Ultimately, the court remanded to the district court for factual findings regarding whether the plea bargaining claim was proce-

durally defaulted, an issue that necessitated a determination of cause and prejudice. *Caruso,* 689 F.2d at 444.

Cir.1992), we held that a facially valid claim of ineffective assistance of counsel was presented by defendant Day's allegation that, although his counsel told him about a plea offer extended by the prosecutor, he did not counsel him about the potential effect of the United States Sentencing Guidelines, nor did he explain the mandatory maximum sentence exposure. Day argued that the failure to counsel him about his potential options and sentencing exposure constituted sub-standard assistance. We agreed that if what Day alleged was true, he would have made a showing of constitutionally deficient performance. *Id.* at 42. We explained that "a defendant has the right to make a reasonably informed decision whether to accept a plea offer." *Id.* at 43 (citing *Hill,* 474 U.S. at 56–57, 106 S.Ct. 366; *Von Moltke,* 332 U.S. at 721, 68 S.Ct. 316 ("Prior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered.")). Included in that informed decision is knowledge regarding the comparative sentencing exposure between the accused's various options. *Day,* 969 F.2d at 43. We therefore remanded to the district court to conduct an evidentiary hearing. *Id.* at 47.

As we explained in *Weatherwax,* 77 F.3d at 1436, the requirement that counsel consult with his or her client concerning issues on which the client has the final word enables the accused to assist with his or her own defense. We stated that "the client's views and desires concerning the best course to be followed are relevant considerations that must be evaluated and taken into account by counsel." *Id.* We noted that consultation promotes a strong attorney-client relationship, and enables the accused to seek alternative representation if he or she does not agree with the course of conduct undertaken by counsel. *Id.* at 1436–37.

In *Strickland,* the Supreme Court "pointed to '[p]revailing norms of practice as reflected in American Bar Association standards' as guides 'to determining what is reasonable.'" *Boria v. Keane,* 99 F.3d 492, 496 (2d Cir.1996) (citing *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052). According to the American Bar Association's standard, "[a] defense lawyer in a criminal case has the duty to advise his client fully on whether a particular plea to a charge appears to be desirable." *See id.* (emphasis omitted) (citing Model Code of Prof'l Responsibility EC 7–7 (1992)). The performance required of defense counsel is not merely telling the client that there is a plea bargain offer or even telling the client the nature of the offer. Rather, the constitutionally required performance is that of complete disclosure in conjunction with full advice and counsel regarding the client's potential sentencing exposure, options regarding plea bargains, and the potential consequences with respect to each option.

In this case, in addition to not communicating the offer to Boyd at all, Sciolla, like the defense lawyer in *Day,* did not counsel Boyd about the advantages and disadvantages of the plea offer, or how it compared to the options of entering an open plea or going to trial. Thus, Boyd was in no position to make a reasonably informed decision regarding his plea because counsel failed to advise him about the statutory maximum sentence, the sentencing guidelines, and differences between the options he faced. Counsel never told Boyd he could receive a sentence greater than four to eight years imprisonment. *See* App. at 45–46. As a result, as Sciolla testified, Boyd had little, or no, participation in the decision-making process regarding the plea process. App. at 46.

In sum, Boyd's counsel's performance was below the range of competence demanded of attorneys in criminal cases. There was, in effect, a complete lack of meaningful assistance with respect to the guilty plea process. The Pennsylvania Superior Court's conclusion that "counsel's actions cannot be deemed ineffective," App. at 88, was an unreasonable application of clearly established federal law, as determined by the Supreme Court, because it was based on the Superior Court's finding that Boyd's "counsel informed him of the existence of the first plea bargain," App. at 85, which itself was an unreasonable determination of the facts in light of the evidence presented to the Superior Court.

Judge Hardiman avoids any comment on the above analysis of Boyd's ineffectiveness of counsel claim by his conclusion that Boyd was not entitled to a hearing in federal court, Hardiman Op. at 374 *et seq.*, and that Boyd's state court offer of proof was insufficient to establish prejudice. *Id.* I consider Boyd's showing relating to the prejudice issue first.

### 2. *Prejudice*

As the Supreme Court has stated, prejudice requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. This requirement has been applied, inter alia, in cases such as this where the claim is ineffectiveness in the guilty plea context. *See Hill,* 474 U.S. at 59, 106 S.Ct. 366; *Caruso,* 689 F.2d at 438. In such an instance, "then, of course, the prejudice question is whether, absent the ineffective assistance," there is a reasonable probability that the defendant would have accepted the plea bargain offer. *See* 5 Wayne R. LaFave et al., *Criminal Procedure* § 21.3(b), at 116, 125–26 (2d ed.1999) (hereinafter "LaFave").

The question arises what constitutes a "reasonable probability"? We have explained that *Strickland* "does not require certainty or even a preponderance of the evidence that the outcome would have been different with effective assistance of counsel; it requires only [a] 'reasonable probability. . . .' " *Day,* 969 F.2d at 45 n. 8 (citing *Strickland,* 466 U.S. at 693–94, 104 S.Ct. 2052; *Hill,* 474 U.S. at 57, 106 S.Ct. 366). It is a relatively low standard, given that it is not necessary to even prove it is "more likely than not" that the outcome would be different.

This court has held that when a defendant would have otherwise accepted a plea bargain offer, there is prejudice in the mere fact that s/he lost that opportunity if the plea bargain offer included a significantly lesser degree of punishment than the sentence received. In *Caruso,* we held that Caruso had alleged prejudice because he claimed that he received a significant additional term of imprisonment resulting from trial counsel's failure to communicate a plea offer that Caruso would have accepted. 689 F.2d at 438. We considered two essential factors: (1) whether Caruso would have accepted the plea bargain offer, and (2) whether Caruso received a significantly greater sentence than that which was offered in the plea bargain. *Id.* In applying those factors, we concluded that "Caruso allege[d] the requisite prejudice, a significant additional term of imprisonment that resulted from counsel's failure to communicate the plea offer which he would have accepted." *Id.*

We rejected the government's argument that, because Caruso received a fair trial subsequent to his counsel's failure to inform him of a plea offer, the fair trial remedied the deprivation. 689 F.2d at 438 (citing *Rose v. Mitchell,* 443 U.S. 545, 557–64, 99 S.Ct. 2993, 61 L.Ed.2d 739 (1979) (rejecting state's argument that habeas re-

view should be foreclosed where claimed error did not affect determination of guilt)). We explained that such an argument was untenable in the plea bargaining context because the subsequent proceeding could not remedy the fact that the defendant was denied the opportunity to present the plea bargain to the judge. ·*Id.* Although we did not presume prejudice, we did find that, if Caruso made a showing that he would have accepted the plea offer, the loss of that opportunity prejudiced him even though he subsequently received a fair trial. Our analysis came close to presuming prejudice but created a requirement that the petitioner prove that he would have accepted the original plea offer.

We considered this issue again in *Day,* 969 F.2d at 45, where Day, who rejected a plea offer of five years imprisonment and ultimately received a sentence of almost twenty-two years imprisonment, alleged that trial counsel failed to tell him what his sentencing exposure was under the sentencing guidelines and under the statutory maximum penalty. We held that Day's allegations, if true, created a showing of prejudice. We rejected the district court's holding that because Day received a subsequent fair trial, he could not have suffered prejudice. *Id.* at 44. We reiterated our holding in *Caruso* that a subsequent fair trial does not remedy the harm caused to a defendant when he is deprived by counsel of the opportunity to accept a plea bargain and be sentenced with that bargain in place. *Id.*

In *Day,* we explained that the basis for our conclusion was that "the Sixth Amendment right to effective assistance of counsel guarantees more than the Fifth Amendment right to a fair trial." *Id.* at 45. In other words, in the plea bargaining context even if counsel's constitutionally deficient conduct does not affect the determination of the accused's guilt under the

Fifth Amendment, *see Caruso,* 689 F.2d at 438 (citing *Rose,* 443 U.S. at 557–64, 99 S.Ct. 2993), petitioner has shown prejudice if there is a "reasonable probability" that the constitutionally deficient performance resulted in an outcome different than that which would have occurred if counsel had been effective. *See Day,* 969 F.2d at 45.

In *United States v. Gordon,* 156 F.3d 376 (2d Cir.1998), the Court of Appeals for the Second Circuit addressed a similar issue. Gordon, whose offenses subjected him to imprisonment for 262–327 months, was not told by counsel that the government had made a plea offer somewhere in the range of 84–115 months. *Id.* at 377–78. Nor did Gordon's attorney counsel him about the difference between the range in the plea offer and that in the potential maximum sentence. *Id.*

The Second Circuit held that the relevant inquiry as to prejudice because of counsel's ineffectiveness was whether there was a "reasonable probability" that the outcome would have been different had Gordon been accurately informed of his sentencing exposure. *Id.* at 380–81. If so, Gordon suffered prejudice. The Second Circuit held that he did, based on the fact that Gordon "did not have accurate information upon which to make his decision to pursue further plea negotiations or go to trial." *Id.* at 380. In reaching this decision, the court relied on two factors: (1) Gordon's statement that he would have accepted the plea bargain offer had counsel told him about it and counseled him with respect to his potential sentencing exposure (i.e., subjective evidence), and (2) the presence of "objective evidence" in the form of the great disparity between Gordon's actual sentencing exposure under the Guidelines and the sentence exposure represented by Gordon's counsel. *Id.* at 380–81.

Coincidentally, a case strikingly similar to Boyd's has recently been decided by the Supreme Court of South Carolina. In *Davie v. South Carolina*, 381 S.C. 601, 675 S.E.2d 416 (2009), the petitioner, pursuant to a plea agreement, pled guilty to various cocaine offenses, child endangerment, and traffic offenses. The judge sentenced him to an aggregate of 27 years imprisonment which petitioner did not appeal. Instead, he filed a Post Conviction Relief Application (PCR) asking the court to vacate his guilty plea on the ground, inter alia, that he was denied effective assistance of counsel because his plea counsel had failed to inform him of a written plea agreement in which the state offered a 15–year sentence in exchange for his plea to all of the pending charges. Plea counsel testified he was unaware of the state's offer until after it had expired because he was relocating his office. The PCR court denied relief, finding that petitioner knowingly and voluntarily pled guilty because he was fully advised of the rights he was waiving by pleading guilty and understood the underlying charges.

The Supreme Court of South Carolina reversed, applying an analysis that was comparable to the Second Circuit's in *Gordon*. Although the Court stated that it gives great deference to the post-conviction relief court's findings of fact and conclusions of law, it adopted the rule "that counsel's failure to convey a plea offer constitutes deficient performance ...," a rule that would be "consistent with the majority of other state and federal jurisdictions," citing in excess of 20 other opinions. *Id.* at 420. The Court held that even if counsel was not aware of the plea offer he was deficient in not objecting to the plea hearing.

The Court then turned to the issue before us, whether petitioner was prejudiced by this deficient performance. The Court noted that following *Strickland*, some state courts have "essentially presumed prejudice merely based on the fact that plea counsel failed to communicate a plea offer," while "other state courts have found prejudice based on the defendant's self-serving statements that he would have accepted the plea offer had he been made aware of it." *Id.* at 421–22. The Court noted that other courts have applied a burden that is seemingly higher and requires objective evidence to show prejudice, i.e., not only that defendant would have accepted the offer but that he would have received a lesser sentence than that which he received.

The Court opted to join those courts that use a case-by-case analysis looking strictly at the facts of each case. The Court noted that it is not always necessary for a defendant to offer objective evidence to support a claim of actual prejudice. It concluded that Davie had proven that he was prejudiced by plea counsel's deficient performance and that the difference in the sentence petitioner received and the plea offer is proof of prejudice. It noted that both the state counsel and plea counsel acknowledged that the state originally offered a 15–year sentence in exchange for the guilty plea, that plea counsel failed to communicate the offer to Davie, that both plea counsel and Davie testified that had this offer been communicated Davie would have accepted the plea agreement, and that had he accepted the original offer, he would have received a significantly lesser sentence than the 27–year sentenced that was imposed.

Boyd's situation fits precisely into the analysis applied by the South Carolina Supreme Court. The Commonwealth has not denied that there was a plea offer of 4–10 years, Sciolla admitted he failed to communicate the offer to Boyd, Boyd testified he would have accepted it had he known of the offer (which Sciolla never counseled him about), and had he accepted it he

would have received a significantly lower sentence than the 8–22 years sentence that was imposed.

In *Day,* this court stated, "[t]he government mocks Day's contention that although he did not plead guilty when he believed that his sentence exposure was approximately eleven years, he would have pleaded guilty had he known that he would receive a sentence of almost twenty-two years. We do not find the contention so implausible that it was properly dismissed without a hearing.... [W]e do not find it at all implausible that a young man would think twice before risking over 3800 extra days in jail just to gain the chance of acquittal of a crime that he knew that he had committed." *Day,* 969 F.2d at 45.

In this case, as in *Day,* Boyd's failure to accept the proffered guilty plea led to a sentence substantially higher than offered, i.e., a sentence of 84–240 months imprisonment compared to the offered 48–96 (or 48–120) months imprisonment. Such a finding is sufficient under our precedent, *Gordon,* and *Davie,* to demonstrate prejudice.

3. *Right to a Hearing*

I turn next to Judge Hardiman's disapproval of the evidentiary hearing held before the Magistrate Judge and the evidence produced there—the first opportunity Boyd was given to produce the relevant facts of counsel's failure to inform him of the plea offer and failure to counsel him regarding the guilty plea. This issue of the right to an evidentiary hearing in habeas corpus cases is of great importance to the district courts. Although the case law speaks in terms of a hearing in the district court, it is equally applicable to a hearing before a magistrate judge to whom the matter is referred by a district judge. A thorough analysis of the relevant case law suggests that not only did the federal court have

discretion to grant Boyd an evidentiary hearing, it was actually required to do so.

In *Townsend v. Sain,* 372 U.S. 293, 312–13, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), a case involving the proper standard for determining whether to grant or deny an evidentiary hearing in federal habeas corpus proceedings, the United States Supreme Court announced the following rule: "Where the facts are in dispute, the federal court in habeas corpus must hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a state court, either at the time of the trial or in a collateral proceeding. In other words a federal evidentiary hearing is *required* unless the state-court trier of fact has *after a full hearing* reliably found the relevant facts." (emphasis added). The Court enumerated six specific circumstances in which a federal habeas court must grant an evidentiary hearing: "(1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing." *Id.* at 313, 83 S.Ct. 745. With respect to scenario (5), the Court reasoned that a federal hearing is necessary if, for any reason "not attributable to the inexcusable neglect of petitioner," crucial evidence pertinent to the federal claim was not developed. *Id.* at 317, 83 S.Ct. 745.

If an evidentiary hearing is not mandatory, the Court explained, "[i]n all other cases where the material facts are in dispute, the holding of such a hearing is in

the discretion of the district judge." *Id.* at 318, 83 S.Ct. 745. Importantly, the Court stressed that "[i]n every case [the district court] has the power, constrained only by his sound discretion, to receive evidence bearing upon the applicant's constitutional claim." *Id.*[24] The opportunity for a petitioner, such as Boyd, to submit an affidavit does not equate with the "full and fair evidentiary hearing" referred to in *Townsend.*

This court has stated that "[f]ollowing *Townsend* it was generally recognized that district courts had plenary authority to conduct evidentiary hearings in their discretion, constrained only by those six occasions in which a hearing was required." *Cristin v. Brennan,* 281 F.3d 404, 414 (3d Cir.2002) (citing *Campbell v. Vaughn,* 209 F.3d 280, 286 (3d Cir.2000), *cert. denied,* 531 U.S. 1084, 121 S.Ct. 789, 148 L.Ed.2d 685 (2001); *Hakeem v. Beyer,* 990 F.2d 750, 770–71 (3d Cir.1993); *Keller v. Petsock,* 853 F.2d 1122, 1129 (3d Cir.1988)).

Almost thirty years later, the Supreme Court partially overruled *Townsend,* albeit not on this issue. In *Keeney v. Tamayo–Reyes,* 504 U.S. 1, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992), the Court addressed the limited question "whether the deliberate bypass standard is the correct standard for excusing a habeas petitioner's failure to develop a material fact in a state-court proceedings." *Id.* at 5, 112 S.Ct. 1715. The Court replaced the "deliberate bypass" standard with the "cause and prejudice" standard for determining whether a petitioner's failure to develop facts in state-court proceedings should be excused. *Id.* at 11–12, 112 S.Ct. 1715.[25]

We considered the effect of *Keeney* in *Cristin,* where we stated, "*Keeney* never applied ... to all requests for evidentiary hearings in habeas actions. The Court described its holding as relevant only when the petitioner 'fail[ed] to develop' the facts of his habeas claim in state court." *Cristin,* 281 F.3d at 415 (alteration in original) (citation omitted). In other words, the holding in *Keeney* was limited to "circumstances in which the material facts were not developed in state court due to the fault of the petitioner." *Id.*

In *Williams v. Taylor,* 529 U.S. 420, 434, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000), decided after the passage of AEDPA, the Supreme Court explained that "the opening clause of § 2254(e)(2)[26] codifies *Kee-*

---

**24.** *Townsend* afforded great discretion to the district courts to determine whether to grant an evidentiary hearing on the theory that "federal district judges are more intimately familiar with state criminal justice, and with the trial of fact, than are we, and to their sound discretion must be left in very large part the administration of federal habeas corpus." 372 U.S. at 313, 83 S.Ct. 745. The Court had "every reason to be confident that federal district judges, mindful of their delicate role in the maintenance of proper federal-state relations, will not abuse that discretion." *Id.* at 318, 83 S.Ct. 745.

**25.** See *Keeney,* 504 U.S. at 5, 112 S.Ct. 1715 (overruling *Townsend* only "in this respect"); *see also id.* at 18, 112 S.Ct. 1715 (stating that "[t]his holding, of course, directly overrules a portion of *Townsend* ....") (O'Connor, J., dissenting).

**26.** The relevant section of the statute provides:

(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
(A) the claim relies on—
(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

*ney's* threshold standard of diligence, so that prisoners who would have had to satisfy *Keeney's* test for excusing the deficiency in the state-court record prior to AEDPA are now controlled by § 2254(e)(2)." The Court clarified that, as in *Keeney*, "[b]y the terms of its opening clause [§ 2254(e)(2) ] applies only to prisoners who have 'failed to develop the factual basis of a claim in State court proceedings.'" *Id.* at 430, 120 S.Ct. 1479. The Court elucidated, "[u]nder the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Id.* at 432, 120 S.Ct. 1479.

As to the concept of diligence, the Court continued, "[t]he question is not whether the facts could have been discovered but instead whether the prisoner was diligent in his efforts." *Id.* at 435, 120 S.Ct. 1479. It does not matter whether the petitioner could have been successful; rather, what matters is whether the petitioner made a reasonable attempt to pursue his/her claims in state court. *Id.* "Diligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." *Id.* at 437, 120 S.Ct. 1479. If there has been no lack of diligence on the part of petitioner, then he has not "failed to develop" the facts under § 2254(e)(2)'s opening clause, and "he will be excused from showing compliance with the balance of the subsection's requirements." *Id.*

In other words, if a petitioner seeks and is denied a hearing in state court, there is nothing in § 2254(e)(2) that bars the district court from granting a hearing. *See id.* at 436–37, 120 S.Ct. 1479. If the petitioner is not in the "group that 'would have had to satisfy *Keeney's* test,'" *Cristin*, 281 F.3d at 415 (quoting *Williams*, 529 U.S. at

434, 120 S.Ct. 1479), then the *Townsend* rule applies, and the district courts have the requirement, or at least the discretion, to grant an evidentiary hearing. *See, e.g., Taylor v. Horn,* 504 F.3d 416 (3d Cir. 2007); *Cristin*, 281 F.3d at 415; *Campbell,* 209 F.3d at 287; *Love v. Morton,* 112 F.3d 131 (3d Cir.1997); *see also* 1 Hertz & Liebman § 20.1b, at 804 ("Even after AEDPA ... *Townsend's* mandatory-hearing standards—and its delegation to district courts of broad discretion to hold evidentiary hearings that are not mandated—continues to govern all situations save those in which the petitioner's procedural default accounts for the state courts' failure to develop the material facts.") For a full discussion of the requirement of a federal evidentiary hearing, *see Goldblum v. Klem,* 510 F.3d 204, 243–52 (3d Cir.2007) (Pollak, J., dissenting). In this case, because Boyd did not "fail" to develop the factual record in state court within the meaning of § 2254(e)(2), *see Williams,* 529 U.S. at 434, 120 S.Ct. 1479; *Cristin,* 281 F.3d at 415, the District Court was not prohibited from granting an evidentiary hearing.

The Hertz & Liebman treatise cautions that "reviewing federal courts have sometimes confused the *Townsend* standard for the 'right to a hearing (as partially modified by *Keeney v. Tamayo–Reyes* and AEDPA's section 2254(e)(2)) with the statutory standard for determining the effect of state factfindings (as modified by AEDPA's sections 2254(d)(2) and 2254(e)(1))." 1 Hertz & Liebman § 20.2d, at 831. Although the two inquiries overlap, they are distinct issues. That the state court may have made a finding of fact does not preclude the requirement of a hearing in the federal habeas court if no hearing was granted in the state court.

28 U.S.C. § 2254(e).

Here, the District Court was required to grant Boyd an evidentiary hearing because '(1) the petition alleges facts that would entitle Boyd to relief if proven; (2) the fact-based claims are not frivolous; and (3) the factual claims were not previously the subject of a full and fair hearing in the state courts for reasons beyond the control of Boyd and his lawyer. *Id.* § 20.1b, at 804–06. The absence of an evidentiary hearing cannot be laid at Boyd's feet. Boyd's counsel sought, and was denied, an evidentiary hearing on his ineffectiveness assistance of counsel claim in his direct appeal, App. at 106, and in his subsequent PCRA petition, and that denial of a hearing was affirmed on appeal to the Superior Court in its 2005 decision, App. at 72–73, the same court earlier responsible for the significant misstatement of fact in its 2002 decision. Boyd therefore met the diligence standard enunciated in *Williams;* thus, he was not responsible for the lack of a hearing, and AEDPA does not limit the federal court's discretion to grant a hearing in this case. It was therefore not error for the federal court to have granted Boyd an evidentiary hearing.

Even if it were not mandatory, there is no question that under the relevant Supreme Court precedent and AEDPA, the District Court had discretion to grant Boyd a hearing. *See Schriro v. Landrigan,* 550 U.S. 465, 127 S.Ct. 1933, 1939, 167 L.Ed.2d 836 (2007). This court recently stated that if a petitioner's factual record is insufficiently developed in the state court "through no fault of his own," § 2254(e)(2) does not preclude the district court from granting a hearing. *Goldblum v. Klem,* 510 F.3d 204, 222 (3d Cir.2007). "In cases where an applicant for federal habeas relief is not barred from obtaining an evidentiary hearing by 28 U.S.C. § 2254(e)(2), the decision to grant such a hearing rests in the discretion of the district court.... In exercising that discretion, courts focus on whether a new evi-

dentiary hearing would be meaningful, in that a new hearing would have the potential to advance the petitioner's claim." *Id.* (citations and internal quotations omitted).

The Supreme Court has never disavowed or retreated from its decision in *Townsend v. Sain.* The Court cited *Townsend* in *Boumediene v. Bush,* —— U.S. ——, ——, 128 S.Ct. 2229, 2270, 171 L.Ed.2d 41 (2008), and placed the constitutional right to habeas corpus above even Congress' power to emasculate its essential features, such as the right to a hearing. Moreover, the Supreme Court cited *Townsend* for the proposition that prior to AEDPA the decision whether to grant an evidentiary hearing was left to the sound discretion of the district courts, and *"[t]hat basic rule has not changed."* *Schriro v. Landrigan,* 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007) (emphasis added). This court, in a post-AEDPA case, applied Townsend as the relevant legal standard for determining whether an evidentiary hearing is required in a post-AEDPA era. *See Richardson v. Pa. Bd. of Prob. & Parole,* 423 F.3d 282, 293 (3d Cir.2005).

Boyd's entitlement to an evidentiary hearing is supported by years of precedent of this court. *See, e.g., Goldblum,* 510 F.3d at 221 (emphasizing that decision to grant evidentiary hearing should be "left to the sound discretion of district courts") (citation and internal quotations omitted); *Richardson,* 423 F.3d at 293 (applying *Townsend* as relevant legal standard for determining whether evidentiary hearing is required in post-AEDPA era); *Marshall v. Hendricks,* 307 F.3d 36, 117 (3d Cir. 2002) (applying *Townsend* to require a hearing where district court failed to hold one in post-AEDPA era); *Campbell,* 209 F.3d at 286–87 (stating that AEDPA permits evidentiary hearing in federal court if petitioner diligently sought to develop fac-

tual basis for his claim in state court but was denied the opportunity for a hearing by the state court); *Yohn v. Love,* 76 F.3d 508, 516 n. 12 (3d Cir.1996) (stating general rule that "[i]n cases where an evidentiary hearing is not mandatory ... the holding of a hearing is left to the discretion of the district court"); *Lesko v. Lehman,* 925 F.2d 1527, 1539 (3d Cir.1991) (stating that district court "must hold an evidentiary hearing, if the habeas applicant did not receive a full and fair evidentiary hearing in a state court") (citation and internal quotations omitted); *United States v. Dawson,* 857 F.2d 923, 927–28 (3d Cir. 1988); *Keller,* 853 F.2d at 1129–30 (vacating district court's denial of petition for habeas corpus and remanding for an evidentiary hearing which was required where no hearing had been held in state courts and facts were disputed); *Mayberry v. Petsock,* 821 F.2d 179, 185 (3d Cir. 1987) (stating general rule that "where there are material facts in dispute which if proven would entitle a petitioner to relief and the petitioner has not been afforded a full and fair evidentiary hearing in state court, either at the time of trial or in a collateral proceeding, a federal habeas court must hold an evidentiary hearing"); *Bibby v. Tard,* 741 F.2d 26, 30 (3d Cir. 1984) ("An evidentiary hearing is required if there is a dispute of material fact-that is, facts which, if true, would entitle the petitioner to relief-and the petitioner was not afforded a full and fair evidentiary hearing in the state courts."); *United States ex rel. McNair v. New Jersey,* 492 F.2d 1307, 1309 (3d Cir.1974) (hearing required in district court where material facts not adequately developed at state court hearing). *See also United States v. Carmichael,* 216 F.3d 224, 227 (2d Cir.2000) (hearing was necessary to determine whether defendant would have accepted plea offer and whether trial court would have approved it).

The importance of an evidentiary hearing is illustrated by the testimony at the only evidentiary hearing in this case that was held by the Magistrate Judge, which is set out in note 4 *supra.* This significant evidence directly contradicts the Pennsylvania Superior Court's determination that trial counsel informed Boyd of the existence of the plea offer. This case therefore directly falls within the exception to AEDPA's requirement of deference because the state court determination "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2).

Judge Hardiman goes on at length to explain why, under Pennsylvania law, the Pennsylvania courts were not required to grant the hearing request because Boyd could have developed the factual basis of his claim by submitting more detailed affidavits. Therefore, he concludes that the federal court was prohibited from holding the only hearing ever held on Boyd's petition. This claim has no basis in law, and is not supported by precedent.

Assuming the Pennsylvania courts had the option to deny Boyd's request for a hearing, that does not mean, and cannot mean, that the federal court was barred from holding a hearing. The discretion afforded to federal district courts to hold a hearing is a cornerstone of Supreme Court habeas corpus precedent going right up to the *Schriro* case in 2007. Federal law requires, or at a minimum permits, a hearing in a case such as this, even if state law does not.

The issue here is not whether Boyd would have succeeded in his habeas claim-it is Judge Hardiman's position that Boyd was not entitled to the one evidentiary hearing he received in federal court. Boyd was clearly diligent, the only issue recognized in *Williams* as relevant to the denial of a state court hearing.

Despite the tenor of the footnotes in Judge Hardiman's comments, I suggest that the proper focus must be on Judge Hardiman's conclusion repeated throughout that Boyd was not entitled to an evidentiary hearing to further develop the factual record. We cannot glide over the dangerous effect of the process favored by Judge Hardiman. It could preclude any evidentiary hearing at all in a habeas case even though the state courts had declined all requests by the petitioner for an evidentiary hearing, as they did in Boyd's case. In stark contrast, the Supreme Court has recognized the significance of an evidentiary hearing in habeas corpus cases.

In *Wingo v. Wedding*, 418 U.S. 461, 474, 94 S.Ct. 2842, 41 L.Ed.2d 879 (1974), the Court stated,

"To experienced lawyers it is commonplace that the outcome of a lawsuit—and hence the vindication of legal rights—depends more often on how the factfinder appraises the facts than on a disputed construction of a statute or interpretation of a line of precedents. Thus the procedures by which the facts of the case are determined assume an importance fully as great as the validity of the substantive rule of law to be applied."

(quoting *Speiser v. Randall*, 357 U.S. 513, 520, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958)).

Surely, Judge Hardiman would not question the relevance of Justice Brennan's comments about the importance of developing the facts merely because they were written before the passage of AEDPA. The respected habeas corpus commentators Hertz and Liebman have commented that even after AEDPA,

[A]n evidentiary hearing is *mandatory* if three conditions are met: (1) A petitioner alleges facts that, if proved, entitle the party to relief; (2) the petitioner's factual allegations survive summary dismissal because they are not palpably incredible or patently frivolous or false; and (3) for reasons beyond the control of the petitioner and the petitioner's attorney (assuming the attorney rendered constitutionally satisfactory assistance), the factual issues were not previously the subject of a full and fair hearing in the state courts or, if a full and fair state court hearing was held, the hearing did not result in factfindings that resolve all the controlling factual issues.

Hertz & Liebman, Federal Habeas Corpus Practice and Procedure, *infra* at § 20.3a (emphasis added). All three conditions are satisfied here. But whether mandatory or not, surely the federal court had the discretion to direct an evidentiary hearing.

One might reasonably inquire what Judge Hardiman finds dangerous in the only evidentiary hearing afforded to Boyd, that before the Magistrate Judge. It is, after all, only at that hearing that Sciolla admitted that he did not tell Boyd directly about the Commonwealth's plea offer, that he rejected that offer even before he told Boyd's mother, that he did not counsel Boyd about the Pennsylvania Sentencing Guidelines, and that he did not tell Boyd about the potential sentence he could receive. Sciolla's admissions supply the fulcrum of Boyd's Sixth Amendment claim of ineffective assistance of counsel, which is the subject of the habeas corpus claim before us.[27]

What goal is served by requiring the federal habeas court to don blinders to the relevant facts that were never the subject of inquiry by the Pennsylvania courts? In

---

**27.** When Boyd's counsel told this court that Boyd's guilty plea was knowing and voluntary, she may not have fully appreciated the implications of that statement under *Tollett*.

Sciolla's admissions at the evidentiary hearing clarify that Boyd's guilty plea was not knowing, as it was entered without adequate assistance of counsel.

this case there is no duplication of effort such as one encounters occasionally in a habeas proceeding. And although Judge Hardiman states as a fact "that Boyd knew about the initial plea offer yet decided to 'take his chances with the discretion of the court,'" Hardiman Op. at 374, the record made at the evidentiary hearing before the Magistrate Judge, where the witnesses were subject to the Commonwealth's cross-examination, shows that was not the fact at all. And the Magistrate Judge found to the contrary.

Habeas corpus, and the evidentiary hearing to which petitioner is entitled, subject the constitutional claim of the petitioner to the light of federal review. The blinders proposed by Judge Hardiman would have the federal court limited to seeing through the glass darkly. Paraphrasing the unforgettable words of Eleanor Roosevelt, it is better to light a candle than to curse the darkness.

### C. *Remedy*

In my view, we should affirm the District Court's determination that Boyd has shown both ineffective assistance and prejudice.

The District Court directed that the Commonwealth reinstate its prior offer. The South Carolina Court in *Davie,* noting there was no evidence that petitioner expressed a desire to proceed to trial rather than plead guilty, imposed a different remedy. It stated that it cannot compel the state to reinstate or the Circuit Court judge to accept the original 15–year plea offer. Instead, it remanded the case for a new sentencing hearing, but directed the state and the Circuit Court judge to take into consideration the prior 15–year offer.

In light of the disposition of the majority of this court to remand for findings related to the merits, I do not discuss the remedy ordered by the District Court. I note merely that if I were writing for the court,

I would have directed that the matter be remanded to the state court for its determination of the appropriate remedy.

Although I maintain my adherence to the foregoing opinion, I believe we have an obligation to make every effort to achieve a judgment concurred in by a majority of the en banc court. *See Green Tree Fin. Corp. v. Bazzle,* 539 U.S. 444, 455, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003) (Stevens, J., concurring in judgment). For that purpose, and because my view of what I regard as the principal legal issue presented, i.e. the application of *Strickland* to Boyd's claim of ineffective assistance of counsel and the rejection of the reliance in Judge Hardiman's opinion on *Tollett* and *Mabry* in situations such as this, comports with Chief Judge Scirica's view, I concur in his judgment for the court.

### D. *Coda*

In reviewing the issues on this appeal, we cannot overlook that the Supreme Court has recently re-confirmed the importance of the protection of habeas corpus, and, in particular, the need for judicial review in connection with that constitutional safeguard. The Court stated that the "protection for the privilege of habeas corpus was one of the few safeguards of liberty specified in a Constitution that, at the outset, had no Bill of Rights. In the system conceived by the Framers the writ had a centrality...." *Boumediene v. Bush,* 553 U.S. ——, 128 S.Ct. 2229, 2244, 171 L.Ed.2d 41 (2008). That was because "[t]he Framers viewed freedom from unlawful restraint as a fundamental precept of liberty, and they understood the writ of habeas corpus as a vital instrument to secure that freedom." *Id.*

Nevertheless, the Court stated that "[w]e do consider it uncontroversial, however, that the privilege of habeas corpus entitles the prisoner to a meaningful op-

portunity to demonstrate that he is being held pursuant to the erroneous application or interpretation of relevant law." *Id.* at 2266 (citation and internal quotation marks omitted). Indeed, "the necessary scope of habeas review in part depends upon the rigor of any earlier proceedings...." *Id.* at 2268. Citing *Townsend,* 372 U.S. at 313, 83 S.Ct. 745, the Court noted that "[f]ederal habeas petitioners long have had the means to supplement the record on review, even in the postconviction habeas setting." *Id.* at 2270. The Court stressed that a petitioner (in that case, a detainee) must be able to present reasonably available evidence to a habeas corpus court, *see id.* at 2273, noting that in the post-trial habeas cases presentation of evidence is limited only where a habeas petitioner has already had a "full and fair opportunity to develop the factual predicate of his claims" or failed to exercise diligence in doing so. *Id.* Although the case before us does not involve detainees in Guantanamo, both the Supreme Court's holding and its language are instructive.

HARDIMAN, Circuit Judge, dissenting in part, in an opinion in which Judges CHAGARES and JORDAN join, and which Judges BARRY and SMITH join for all except Part V.

All members of the Court sitting en banc agree that the District Court correctly determined that Boyd's claim was not procedurally defaulted. As for Boyd's claim of ineffective assistance of counsel, however, nine judges agree that the District Court erred when it conditionally granted Boyd a writ of habeas corpus. Although I agree that the writ should not have issued, I must respectfully dissent from the six-judge majority which holds that the District Court's error requires a remand.

Boyd should be denied habeas relief for two independent reasons. First, pursuant to the Supreme Court's decisions in *Tollett*

*v. Henderson,* 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973), and *Mabry v. Johnson,* 467 U.S. 504, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984), Boyd's guilty plea—which he candidly admits was knowing, intelligent, and voluntary—superseded and rendered immaterial any ineffective assistance of counsel that preceded it. Second, even assuming that *Tollett* and *Mabry* do not apply, Boyd cannot show prejudice under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

I.

In the summer of 2000 and one month before his twentieth birthday, Boyd was living at home with his parents when he decided to pass the time by drinking in a park with William Carpenter, Raymond Jones, and a few other friends. In a fit of bravado, Jones wagered that he could drink ten shots of alcohol in ten minutes. After Boyd and Carpenter refused to pay Jones for what can best be described as a Pyrrhic victory, an argument ensued and a short time later Boyd retrieved an aluminum bat and beat Jones with it. Jones lay unconscious and bleeding on the ground for some time before Boyd and Carpenter took him to the hospital. Jones suffered permanent brain injuries which left him confined to a wheelchair. Boyd initially attempted to conceal his role in the crime by hiding the baseball bat and fabricating an alibi. Five days after the attack, Boyd confessed to police.

The Commonwealth charged Boyd with attempted murder, aggravated assault, simple assault, reckless endangerment, tampering with evidence of a crime, and possession of an instrument of crime. Boyd's parents posted bail and hired a family friend, attorney Guy Sciolla, to represent their son. During the pretrial phase, the Commonwealth contacted Sciolla and proposed a plea agreement that

included a recommended sentence of 4–8 years of imprisonment.[28] Sciolla telephoned Boyd's mother, informed her of this offer, and asked her to communicate it to Boyd. Sciolla also advised Boyd's mother that the offer was unacceptable, and asked her to tell Boyd as much. She did so, and Sciolla rejected the offer.[29] Thus, Boyd himself never was asked to accept or reject the initial plea offer, and there is no evidence that the trial court approved it or was even aware of its existence.

After he rejected the initial plea offer, Sciolla negotiated a second deal with the Commonwealth pursuant to which Boyd would enter an open plea to the charges of aggravated assault and possession of an instrument of crime. In exchange, the Commonwealth agreed to *nolle prosequi* the charges of attempted murder, simple assault, reckless endangerment, and evidence tampering. On Sciolla's advice, Boyd accepted this second offer, and pleaded guilty to the two aforementioned charges before the Honorable Gary S. Glazer of the Court of Common Pleas of Philadelphia County.

About two months later, Judge Glazer sentenced Boyd to a term of imprisonment of 8–22 years. Boyd appealed and Judge Glazer issued a written opinion in which he found that Boyd entered a knowing, intelligent, and voluntary plea of guilty after having signed a written guilty plea, which was supplemented by an extensive oral colloquy. Judge Glazer reviewed the details of the oral colloquy—which included an admonition that Boyd could be sentenced to "anything up to 12 and a half to 25 years in prison," App. 159—and concluded: "nothing more could have been done to ensure that [Boyd's] guilty plea was knowing, intelligent and voluntary." App. 93.

In his direct appeal to the Pennsylvania Superior Court, Boyd's second lawyer, Thomas Quinn, argued that trial counsel (Sciolla) was ineffective by failing to discuss the relative merits of accepting the Commonwealth's initial plea offer. Quinn asserted that Sciolla had communicated the initial plea offer "to [Boyd] and his parents," and that Boyd "accepted the advice of counsel, and rejected the plea." App. 135. In support of this claim, Boyd submitted an affidavit in which he admitted that Sciolla "told me, through my mother" of the initial plea offer. App. 116. Boyd did not attack the validity of his open guilty plea, but the Superior Court noted nonetheless that Boyd's "guilty plea was entered knowingly, intelligently, and voluntarily." App. 88. The Superior Court affirmed the judgment of sentence, finding that Boyd's own affidavit conceded that he knew about the initial plea offer, but "decided to take his chances on the discretion of the court as to sentencing." App. 85–86. The Pennsylvania Supreme Court denied allocatur.

Upon the conclusion of direct review, Boyd's third counsel, Cheryl Sturm, filed a collateral challenge under Pennsylvania's Post Conviction Relief Act (PCRA), 42 PA. Cons.Stat. Ann. § 9541 *et seq.*, in which Boyd alleged for the first time that Sciolla provided ineffective assistance when he re-

---

**28.** The terms of this initial plea offer are disputed. Boyd contends that the offer was to recommend a 4–8 year prison sentence while the Commonwealth insists that the recommended term was 4–10 years. Although the District Court appeared to agree with Boyd, its remedy suggests that it accepted the Commonwealth's characterization. The disparity is immaterial to this opinion.

**29.** There is considerable ambiguity about what Sciolla meant when he testified that he rejected the initial plea offer. Boyd insists that Sciolla rejected the initial plea offer before Boyd learned of it. The Commonwealth maintains that the offer was still on the table if Boyd later had expressed an interest in it. This dispute is immaterial as well.

jected the initial plea offer without first discussing it with him. Boyd also argued that Quinn had rendered ineffective assistance by failing to present all of the pertinent facts on direct appeal. Significantly, Boyd did not challenge the validity of his guilty plea.

The PCRA court denied the application, holding that Boyd's claims were previously litigated under 42 Pa. Cons.Stat. Ann. § 9543(a)(3) and, in an alternative holding, explained that Boyd's claim against Sciolla would fail on its merits. The Superior Court affirmed on the basis that Boyd's claims against Sciolla and Quinn under *Strickland* were previously litigated, and noted that Boyd's "own affidavit conceded trial counsel informed him of the existence of the first plea offer, which [Boyd] chose not to accept." App. 71.

During the pendency of his PCRA application, Boyd filed an initial and an amended petition for writ of habeas corpus (collectively, Petition) under 28 U.S.C. § 2254, in which he reiterated the same *Strickland* claims against Sciolla and Quinn that he had raised in his PCRA application. The case was assigned to United States Magistrate Judge Peter B. Scuderi, who held an evidentiary hearing at which Boyd, Sciolla, and Quinn testified. Once again, Boyd failed to allege in his Petition that his guilty plea was not knowing, intelligent, or voluntary. Nevertheless, at some point that issue appeared to have been joined before the Magistrate Judge. In his Report and Recommendation (R & R), Magistrate Judge Scuderi specifically addressed the issue, noting that Boyd's guilty plea was constitutionally valid because the thorough colloquy "belie[d] any claim [Boyd] would make regarding the voluntary and knowing nature of his plea." App. 25.

The Magistrate Judge recommended that the District Court deny Boyd's Petition because it failed on the merits under *Strickland.*[30]

Following the adverse R & R, Boyd filed objections in which he alleged that the Magistrate Judge "misperceive[d] the nature of [his] claims. [Boyd] is not claiming the guilty plea was not knowing, intelligent and voluntary. . . . [Boyd] does not want to take back the plea." *Boyd v. Warden,* Civ. No. 06–491, Dkt. 18 at 6 (E.D.Pa. Dec. 19, 2006). Boyd argued that he was entitled to a writ of habeas corpus because Sciolla's failure to communicate the Commonwealth's plea offer directly to him constituted ineffective assistance that prejudiced him under *Strickland.*

The District Court agreed with Boyd and rejected the R & R. Applying *de novo* review without holding any hearing, the District Court found that Boyd was entitled to relief under *Strickland* because: (1) Sciolla's failure to speak directly with Boyd before rejecting the Commonwealth's initial plea offer was *per se* deficient; and (2) Boyd was prejudiced because he ultimately received a sentence which was more than double the sentencing guidelines range under the initial offer. The District Court concluded that because Boyd should be returned to the position he would have been in but for Sciolla's ineffectiveness, the writ should issue unless the Commonwealth revived the original plea offer. The District Court also noted that Boyd abandoned his *Strickland* claim as to Quinn.

The Commonwealth filed a motion for reconsideration, which the District Court denied. The Commonwealth also filed a motion to stay the issuance of the writ

---

30. The Magistrate Judge should not have addressed this issue, because Boyd's failure to raise it at any point in the state court proceedings constituted a procedural default.

*See Coleman v. Thompson,* 501 U.S. 722, 729–30, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Albrecht v. Horn,* 471 F.3d 435, 459–60 (3d Cir.2006) (vacated on other grounds).

pending appeal, but the District Court denied that motion as well.

## II.

The Commonwealth filed a timely appeal in this Court and we have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253. A three-judge panel heard argument on October 25, 2007. This Court granted initial rehearing en banc, and oral argument was held before the full Court on November 19, 2008. Although the appeal presents two important issues affecting our habeas corpus jurisprudence—one procedural and one substantive—the extensive briefing and oral argument presented to the Court en banc focused entirely on the substantive issue.

## II.

We begin by addressing the Commonwealth's procedural challenge, *viz.*, that Boyd's claims are unexhausted and procedurally defaulted. Our review is plenary. *See Holloway v. Horn,* 355 F.3d 707, 713 (3d Cir.2004). As we will explain, the Commonwealth's arguments are premised on a fundamental misunderstanding of the import of Pennsylvania's "previously litigated" rule. *See* 42 PA. CONS. STAT. ANN. § 9543(a)(3). Because this rule has generated confusion, we will discuss its ramifications for the procedural default analysis at some length.

Under the PCRA, a petitioner cannot obtain review on the merits unless he can show that an "allegation of error has not been previously litigated or waived." *Id.* An allegation is "previously litigated" if "the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue" or the allegation "has been raised and decided in a proceeding collaterally attacking the conviction or sentence." 42 PA. CONS.STAT. ANN. §§ 9544(a)(2) and (3). Furthermore, "an issue may not be relitigated merely because a new or different

theory is posited as a basis for reexamining an issue that has already been decided." *Commonwealth v. Senk,* 496 Pa. 630, 437 A.2d 1218, 1220 (1981).

Boyd did not dispute that his *Strickland* claim was "previously litigated" for purposes of the PCRA, but he argued that this did not constitute a procedural bar to his federal habeas claim. The District Court agreed, stating: "[t]his court agrees with the determination of other courts in this district holding that the PCRA's 'previously litigated' rule is not a state procedural requirement within the meaning of *Coleman [v. Thompson,* 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) ]."

## A.

It is axiomatic that "a habeas petitioner is required to exhaust available state remedies before requesting habeas relief in federal court." *McMahon v. Fulcomer,* 821 F.2d 934, 940 (3d Cir.1987). Exhaustion is accomplished when a petitioner "presents" in the state courts substantially the same claim he asks the federal courts to review. *See Johnson v. Pinchak,* 392 F.3d 551, 556 (3d Cir.2004). "The habeas petitioner carries the burden of proving exhaustion of all available state remedies." *Lambert v. Blackwell (Lambert I),* 134 F.3d 506, 513 (3d Cir.1997) (citation omitted).

In this case, the District Court found that Boyd exhausted his claim that Sciolla was ineffective in rejecting the initial plea offer without consulting his client. The record supports the District Court's conclusion because Boyd made this argument to the PCRA courts. Additionally, Boyd alerted the PCRA courts to the federal nature of his claim by citing *Strickland,* which satisfied the presentation requirement. *See Baldwin v. Reese,* 541 U.S. 27, 29, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004); *see also Hameen v. Delaware,* 212

F.3d 226, 247 (3d Cir.2000). That the courts denied Boyd's claim on procedural grounds does not change the fact that he "presented" it. *See Holloway*, 355 F.3d at 717–18.

Although the Commonwealth concedes that Boyd presented this federal claim in the PCRA proceedings, it argues that the District Court's finding of exhaustion is contrary to *Wenger v. Frank*, 266 F.3d 218 (3d Cir.2001), where we held that a habeas petitioner who neglected to file a timely petition for allocatur to the Pennsylvania Supreme Court failed to exhaust his claims. *Id.* at 223–24. Significantly, however, Boyd's claim arose after the Pennsylvania Supreme Court issued *In re: Exhaustion of State Remedies in Criminal and Post Conviction Relief Cases*, No. 218 Judicial Administration Docket No. 1 (Order 218). Since *Wenger* we have held that Order 218 "renders review from the Pennsylvania Supreme Court 'unavailable' for purposes of exhausting state court remedies under § 2254(c)." *Lambert v. Blackwell* (*Lambert II* ), 387 F.3d 210, 233 (3d Cir.2004). Accordingly, we hold that Boyd exhausted his *Strickland* claim in state court. *See Cristin v. Brennan*, 281 F.3d 404, 410 (3d Cir.2002).

### B.

■ Our conclusion that Boyd exhausted his *Strickland* claim does not answer the question of procedural default, however, because the Supreme Court has made clear that a procedural default "forecloses relief even when the petitioner has exhausted his remedies." *See O'Sullivan v. Boerckel*, 526 U.S. 838, 850, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999) (Stevens, J., dissenting); *see also id.* at 848, 119 S.Ct. 1728 (O'Connor, J., writing for the majority) ("We do not disagree with Justice Stevens' general description of the law of exhaustion and procedural default" and "[s]pecifically, we do not disagree with his

description of the interplay of these two doctrines.").

Whereas the exhaustion inquiry asks whether a claim was "presented to the state courts," the procedural default analysis considers whether the claim was "presented in the *manner* that state law requires." *See Edwards v. Carpenter*, 529 U.S. 446, 452, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000) (emphasis added) (internal quotation marks omitted). Thus, a petitioner who does not "fairly present" his claim to the state courts is barred from presenting it to the federal courts. *Cristin*, 281 F.3d at 410.

To understand why Pennsylvania's rule against relitigating claims in PCRA proceedings that have been "previously litigated" under the current statute does not operate as a procedural default, we need only consider the Pennsylvania rule in light of the "adequate and independent" state ground doctrine, of which the procedural default rule is but one application. *See Villot v. Varner*, 373 F.3d 327, 334 (3d Cir.2004) (citation omitted). That doctrine precludes a federal habeas court from addressing a question of federal law decided by a state court "if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman*, 501 U.S. at 729, 111 S.Ct. 2546. "A state rule provides an adequate and independent basis for precluding federal review if (1) the rule speaks in unmistakable terms; (2) all state appellate courts refused to review the petitioner's claims on the merits; and (3) their refusal was consistent with other decisions." *Nara v. Frank*, 488 F.3d 187, 199 (3d Cir.2007) (citations omitted). Pennsylvania law provides that a claim raised in a PCRA petition is "previously litigated" if the Superior Court decided the issue "on the merits" on direct appeal. *See* 42 PA. CONS. STAT.

ANN. § 9544(a)(2). Thus, when a PCRA court refuses to reach the merits of an issue because it was "previously litigated," it confirms that a Pennsylvania appellate court already rendered a decision on the merits. Because this rule assumes the inverse of one of the preconditions of a procedural default—*viz.,* that "*all* state appellate courts refused to review the petitioner's claims on the merits," *see Nara,* 488 F.3d at 199 (emphasis added)—it is not an "independent" state law ground.

The Commonwealth contends that our decision in *Sistrunk v. Vaughn,* 96 F.3d 666 (3d Cir.1996), commands a different result. We disagree. In *Sistrunk,* we held that the 1994 version of § 9543(a)(3) was an adequate and independent state law ground supporting procedural default. *See id.* at 674–75. Significantly, however, that version of the statute provided that a claim was "previously litigated" if "the trial court ... ruled on the merits of the issue and the petitioner did not appeal." 42 PA. CONS. STAT. ANN. § 9544(a)(1). Because Sistrunk did not raise his claim on direct appeal, we concluded that the claim was procedurally defaulted. *See Sistrunk,* 96 F.3d at 669, 673–75. Nevertheless, writing for a unanimous panel, Judge Stapleton explained the oxymoronic aspect of the statute insofar as it defined unappealed claims as "previously litigated":

> The [previously litigated doctrine] foreclose[s] state review in a PCRA proceeding of claims that have been fully litigated and rejected on direct appeal [as well as claims which were not presented on direct appeal]. While such claims and claims like Sistrunk's are both categorized by the statute as "previously litigated," the two categories are distinct for purposes of the adequate and independent state ground doctrine.... Unlike here, in a situation where a claim has been "previously litigated" and collateral review is barred by § 9544(a)(3)—because the claim has

been fully litigated and rejected on direct review—the petitioner will have exhausted state remedies and the state appellate courts will have had the required opportunity to address the federal claim. *Nothing here said is intended to address whether federal habeas review would be available with respect to claims fully litigated on direct review in such a case.*

*Id.* at 675 n. 11 (emphasis added). In 1995, the Pennsylvania legislature amended the statute to clarify that unappealed claims are "waived," and *not* "previously litigated" as they had been under the prior version of the statute. *See* 42 PA. CONS. STAT. ANN. § 9544(a) and (b).

In the case at bar, this distinction makes all the difference. Because the state courts invoked the "previously litigated" rule to decline reconsideration of Boyd's *Strickland* claim on the ground that it *had* been litigated on direct appeal, and did not find this claim to be "waived" within the meaning of § 9544(b), we are presented with the situation anticipated by the panel in *Sistrunk.* In light of the Supreme Court's acceptance of Justice Stevens's characterization of the procedural default doctrine as a "waiver rule," *see O'Sullivan,* 526 U.S. at 850, 119 S.Ct. 1728, we conclude that *Sistrunk's* holding is limited to those cases arising under the "waiver" section set forth in § 9544(b).

In its current form, the "previously litigated" rule codified in § 9544(a) simply relieves Pennsylvania courts of the burden of revisiting issues which are res judicata. But res judicata is not an adequate state law ground to support a procedural default. *See, e.g., Daniels v. Knight,* 476 F.3d 426, 431 (7th Cir.2007); *see also Stevens v. Zant,* 968 F.2d 1076, 1089 (11th Cir.1992). Even the courts of appeals that have yet to hold res judicata-based rules "inadequate," have refused to treat them as a basis for procedural default. *See*

*Carter v. Giurbino*, 385 F.3d 1194, 1198 (9th Cir.2004) (California's bar against relitigation in state habeas proceedings of claims already litigated on direct appeal is "neither a ruling of procedural default nor a ruling on the merits"); *see also Page v. Lee*, 337 F.3d 411, 415 n. 1 (4th Cir.2003) (although North Carolina's bar against relitigation of issues decided on appeal was an adequate and independent state procedural rule, it was "not a state procedural bar that prevents federal habeas review").[31]

Even apart from § 9544(a)'s "adequacy" or "independence," it is clear that the "previously litigated" rule insulates state courts from duplicative effort but does not preclude federal habeas review. When a PCRA court invokes the "previously litigated" rule, it does so not because an applicant has failed to present his claims, but because he has *already* presented those claims at least once before and received a decision on the merits. This situ-

ation may implicate res judicata, but "[f]ederal review is precluded only by *procedural forfeitures*, not by *res judicata* concerns." *Page v. Frank*, 343 F.3d 901, 907 (7th Cir.2003) (emphasis added) (citations omitted). Viewed from this perspective, treating Pennsylvania's "previously litigated" rule as a procedural default would contravene the very purpose of that doctrine: to ensure that state courts have had "an opportunity to address [a petitioner's claims] in the first instance." *Coleman*, 501 U.S. at 731–32, 111 S.Ct. 2546. State rules that preclude relitigation on collateral review of claims already decided on direct appeal serve a salutary purpose in state courts, but they are not the kind of "state procedural requirement" that lead to a default of habeas claims in federal court, which typically occurs because a petitioner *fails* to raise an issue, not because he raises that issue *twice.* ⁱ See, e.g., *Slutzker v. Johnson*, 393 F.3d 373, 381 (3d Cir.2004).[32] This is consistent with Su-

---

**31.** Only the Sixth Circuit has held to the contrary. *See Carter v. Mitchell*, 443 F.3d 517, 538 (6th Cir.2006) (Ohio's res judicata rule, which bars relitigation of issues that were raised or could have been raised, is an "adequate and independent" ground justifying default) (citations omitted). Following *Carter*, the Sixth Circuit explained: "There are two variants of res judicata under Ohio law for collateral attacks on convictions. The first variant is when a petitioner could have, but failed to, bring a claim on direct review. The second variant occurs in state court when a claim was *actually brought and litigated* on direct appeal. This second variant of res judicata cannot form the basis of federal procedural default, however, because the petitioner did not *fail* to comply with a state procedural rule-namely that claims must be raised on direct appeal if possible." *Durr v. Mitchell*, 487 F.3d 423, 434 (6th Cir.2007) (citation omitted) (emphasis in original). Thus, inasmuch as *Carter's* failure to distinguish between the variant of the Ohio rule governing issues that were previously litigated, and the variant which governed issues that were waived, its teachings are no more helpful to

our interpretation of the current version of § 9544(a) than *Sistrunk*.

**32.** Our confidence in this conclusion is bolstered by our recognition that characterizing § 9544(a)'s "previously litigated" requirement as a basis for procedural default would lead to absurd consequences in practice. If a "previously litigated" claim were to constitute a procedural default, we would consider whether Boyd could show "cause and prejudice" or a "fundamental miscarriage of justice" to excuse that default. *See Coleman*, 501 U.S. at 750, 111 S.Ct. 2546. "To show 'cause,' the petitioner must demonstrate some objective factor external to the defense that prevented compliance with the state's procedural requirements." *Holloway*, 355 F.3d at 716 n. 3 (citation and internal quotation marks omitted). Petitioner's noncompliance would be his "litigation" of the issue on direct appeal. The Kafkaesque absurdity of asking a petitioner to excuse his own litigation of an issue on direct appeal—which litigation is required by the doctrines of exhaustion and procedural default—demonstrates why the "previously litigated" rule is not the kind of

preme Court dicta. *See Ylst v. Nunne-maker,* 501 U.S. 797, 804 n. 3, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) (noting that a state decision based on ineligibility for further state review does not constitute a procedural default).

For all of the foregoing reasons, we hold that the District Court correctly determined that Boyd exhausted his *Strickland* claim in the state courts, and that this claim was not procedurally defaulted by Pennsylvania's bar against the relitigation of "previously litigated" claims in PCRA proceedings.

## IV.

Turning to the merits, in preparation for en banc review, we ordered the parties to brief numerous issues including: (1) the appropriate standard of review in light of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA); (2) the propriety of the Magistrate Judge's evidentiary hearing; (3) and the District Court's *de novo* review of the facts found by the Magistrate Judge. Review of these complex questions was essential to a proper evaluation of Boyd's claim that Sciolla rendered ineffective assistance of counsel with respect to the Commonwealth's initial guilty plea offer. Ultimately, however, the adequacy of Sciolla's representation with respect to the Commonwealth's initial guilty plea offer is immaterial because Boyd's knowing, intelligent, and voluntary guilty plea "represents a break in the chain of events which has preceded it in the criminal process." *Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973). That is, once Boyd pleaded guilty, he forfeited his ability to challenge any constitutional deficiency that came before that plea—provided, of course, that the plea was validly entered.

In *Tollett,* Henderson, a state prisoner who had pleaded guilty and was sentenced to 99 years in prison, sought federal habeas relief because "Negroes had been excluded from the grand jury which indicted him in 1948." *Id.* at 259, 93 S.Ct. 1602. The district court granted the writ of habeas corpus and ordered Henderson's release, finding that he did not waive his right to be indicted by a constitutionally selected grand jury. *Id.* at 261, 93 S.Ct. 1602. The Court of Appeals for the Sixth Circuit affirmed, holding that there was no "intentional relinquishment or abandonment of a known right or privilege." *Id.* (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)).

The Supreme Court reversed, holding that Henderson was not "entitled to release from custody solely by reason of the fact that the grand jury which indicted him was unconstitutionally selected." *Id.* at 269, 93 S.Ct. 1602. Instead, once Henderson pleaded guilty, he forfeited his right to challenge any constitutional violations that antedated the plea. *See id.* at 266, 93 S.Ct. 1602. The Court reasoned:

> We thus reaffirm the principle recognized in the *Brady* trilogy: a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann [v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970) ].

"procedural requirement" that *Coleman* envisioned.

*Tollett,* 411 U.S. at 267, 93 S.Ct. 1602. "The focus of federal habeas inquiry is the nature of the advice and the voluntariness of the plea, not the existence as such of an *antecedent* constitutional infirmity." *Id.* at 266, 93 S.Ct. 1602 (emphasis added). Because the record was unclear whether Henderson was "precluded from raising the issue of the voluntary and intelligent nature of his guilty plea," *id.* at 268, 93 S.Ct. 1602, the Supreme Court remanded the case.

Eleven years after *Tollett,* the Supreme Court considered the case of George Johnson, who was convicted in Arkansas state court of burglary, assault, and murder. *See Mabry v. Johnson,* 467 U.S. 504, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984). Although Johnson was sentenced to concurrent sentences of 21 years for the burglary and 12 years for the assault, the Arkansas Supreme Court vacated the murder conviction. *Id.* at 505, 104 S.Ct. 2543. Upon remand, negotiations ensued and the prosecutor offered Johnson a plea bargain on the murder charge that included a recommendation for a concurrent sentence of 21 years. *Id.* at 505–06, 104 S.Ct. 2543. Three days later, Johnson accepted the prosecutor's offer. Claiming that he was mistaken, the prosecutor purported to withdraw the offer that Johnson had already accepted, and offered a plea bargain that included a recommendation for a *consecutive* sentence of 21 years. *Id.* at 506, 104 S.Ct. 2543. Johnson initially rejected the prosecution's second offer, but later accepted it and received a consecutive sentence of 21 years. *Id.*

Presumably because he learned that he could have enforced the initial plea offer for a recommendation for a concurrent sentence, Johnson filed a habeas petition in federal court. The district court denied the petition, but the court of appeals reversed, holding that the prosecution's initial offer was enforceable. *Id.* at 506–07, 104 S.Ct. 2543.

Writing for a unanimous Supreme Court, Justice Stevens began by noting: "It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Id.* at 508, 104 S.Ct. 2543. "It is only when the consensual character of the plea is called into question that the validity of a guilty plea may be impaired." *Id.* at 508–09, 104 S.Ct. 2543. The Court summed up its terse opinion by noting that Johnson "was fully aware of the likely consequences when he pleaded guilty; it is not unfair to expect him to live with those consequences now." *Id.* at 511, 104 S.Ct. 2543.

Like Henderson and Johnson, here Boyd does not challenge the validity of his guilty plea. Indeed, both in his brief before the en banc court and at oral argument, Boyd conceded that his plea was knowing, intelligent, and voluntary. Instead, Boyd claims ineffective assistance of counsel at a point that *preceded* the entry of the valid guilty plea. In light of the Supreme Court's decisions in *Tollett* and *Mabry,* Boyd's valid guilty plea should be the beginning and the end of the matter.

Neither counsel for Boyd nor the Federal Defender amici even cite, much less attempt to distinguish, *Tollett.* Both briefs attempt to distinguish *Mabry;* but the efforts are unpersuasive. They claim that counsel in *Mabry* was competent whereas Sciolla was ineffective for Boyd. This is a false distinction. Both here and in *Mabry,* counsel were arguably ineffective in their representation *prior* to their clients' guilty pleas. However, neither Boyd nor the plaintiff in *Mabry* contended that counsel was ineffective with regard to the plea itself. In this case, on the contrary, Boyd's repeated assertion that he knowingly, intelligently, and voluntarily accepted the terms of the second plea offer is

a concession that Sciolla was not ineffective in his representation with regard to that plea. Indeed, it is a logical and legal impossibility to say that one's decision was knowing, intelligent, and voluntary if it was infected by constitutionally deficient advice from counsel.

In *Mabry*, counsel could have filed a motion to enforce the 21–year concurrent sentence deal because his client had accepted the offer before it was withdrawn. *See United States v. Moscahlaidis*, 868 F.2d 1357, 1361 (3d Cir.1989) ("Although a plea agreement occurs in a criminal context, it remains contractual in nature and is to be analyzed under contract-law standards."). Under contract principles, one may accept an offer at any point until the offer is withdrawn. *See* RESTATEMENT (SECOND) OF CONTRACTS § 35 (1981).

Here, Sciolla could have—and should have—communicated the Commonwealth's initial offer directly to Boyd rather than "through his mother." Nonetheless, there is no question as to the adequacy of Sciolla's advice that the case was not triable, nor is it disputed that Boyd entered a valid guilty plea. This valid plea dooms Boyd's claim for habeas relief in the same way that it doomed Johnson's claim in *Mabry*.

In sum, because *Tollett* and *Mabry* foreclose Boyd from challenging any constitutional violation antecedent to his valid guilty plea, I would reverse the District Court's conditional grant of the writ of habeas corpus.

## V.

A majority of the court holds that *Tollett* and *Mabry* do not control Boyd's case because *Strickland* applies instead.[33] However, even if this Court were to ignore *Tollett* and *Mabry*, Boyd's claim would fail under the *Strickland* test.[34]

It is important to recall what we have been asked to decide in this appeal. The parties focus on whether Sciolla was constitutionally ineffective for rejecting the Commonwealth's initial offer of 4–8 years imprisonment without first discussing it with Boyd and, if so, whether Boyd was prejudiced thereby. I accept this general characterization of the issue, but qualify it in two respects. First, our Court does not assess the merits of this habeas petition as we would have had the issue been raised

---

**33.** Like Boyd's case, both *Tollett* and *Mabry* involved arguably ineffective assistance of counsel prior to the entry of a valid guilty plea, whereas *Strickland* was a death penalty case where the issue was whether counsel was ineffective during the penalty phase after the entry of a valid guilty plea. Furthermore, and perhaps more importantly, *Mabry* was decided one month after *Strickland* and does not even mention *Strickland*. Therefore, in my view, despite *Strickland's* ubiquity, its two-part test applies to cases alleging ineffective assistance in conjunction with, or subsequent to, a guilty plea, but does not apply to ineffectiveness antecedent to a valid guilty plea.

Judge Sloviter's citation to *Menna* is not persuasive because *Menna* is a waiver case and the state does not allege that Boyd "waived" his right to bring his ineffective assistance claim. As the Supreme Court explained in *Tollett:*

> If the issue were to be cast solely in terms of "waiver," the Court of Appeals was undoubtedly correct in concluding that there had been no such waiver here. But just as the guilty pleas in the *Brady* trilogy were found to foreclose direct inquiry into the merits of claimed antecedent constitutional violations there, we conclude that respondent's guilty plea here alike forecloses independent inquiry into the claim of discrimination in the selection of the grand jury. 411 U.S. at 266, 93 S.Ct. 1602.

**34.** Judges Barry and Smith do not join Part V of this Opinion, not because they disagree that Boyd's claim would fail under the *Strickland* test, but because they believe that it is unnecessary to reach the issues addressed in this section.

on direct appeal; as Chief Judge Scirica's opinion explains, we must remain faithful to AEDPA's deferential standard of review. *See* 28 U.S.C. § 2254(d). Second, because the issue of *Strickland* prejudice turns on the facts, we must consider only those facts which were either developed in the state court, or *properly* developed in the District Court under AEDPA. *See* 28 U.S.C. § 2254(e)(2).

### A.

The *per curiam* opinion instructs the District Court to decide on remand whether the Magistrate Judge should have held an evidentiary hearing in this case. In my view, such a hearing is precluded by AEDPA.

A federal district court's power to hold a hearing is limited by AEDPA. This restriction is consistent with the principle that "[f]ederal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." *Taylor*, 504 F.3d at 437 (quoting *Williams v. Taylor*, 529 U.S. 420, 437, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000)). Here, in ordering an evidentiary hearing, the Magistrate Judge erroneously failed to ascertain whether AEDPA authorized such a hearing. This error was significant because the record reflects that Boyd "has failed to develop the factual basis" of his claim in state court. 28 U.S.C. § 2254(e)(2).

Boyd attempted to "develop the factual basis" for his claim by requesting an evidentiary hearing in state court. 28 U.S.C. §§ 2254(e)(2). But because Pennsylvania law provides that the right to an evidentiary hearing in post-conviction proceedings is not automatic, *see Commonwealth v. Jordan*, 772 A.2d 1011, 1014 (Pa.Super.2001), Boyd was required to offer evidence and argument in support of his claims of counsel ineffectiveness and preju-

dice. *See Commonwealth v. Jones*, 942 A.2d 903, 906–07 (Pa.Super.2008) (noting that "a hearing will be rendered superfluous if the court can determine from the existing record that there has been no prejudice to the appellant"); *see also* Pa. R.Crim. P. 907(1). When a defendant attempts to show the need for an evidentiary hearing by providing affidavits, those affidavits must "tie everything together"; otherwise, he will not be entitled to a hearing. *See Commonwealth v. Hall*, 867 A.2d 619, 632 (Pa.Super.2005).

Reading the affidavits Boyd submitted and the pleadings filed by counsel in light of the fact that Boyd knew about the initial plea offer yet decided to "take his chances with the discretion of the court," the state court determined that no evidentiary hearing was warranted. The record confirms that Boyd's state court offer of proof was insufficient to establish prejudice, and did not put the court on notice that he could establish cause. Because the affidavits Boyd submitted were not sufficiently relevant or comprehensive to establish both prongs of his ineffectiveness claim in state court, Boyd failed to develop the factual basis for his ineffective assistance claims before coming to federal court. *See, e.g., Owens v. Frank*, 394 F.3d 490, 500 (7th Cir.2005) (finding the petitioner who was denied a hearing in state court did not develop the factual record diligently under § 2254(e)(2) because, *inter alia,* the affidavits he submitted to the state court omitted key factual allegations known to him).

Given that Boyd failed to meet Pennsylvania's prerequisites for an evidentiary hearing, it follows that he is not entitled to a hearing in federal court. Section 2254(e)(2) bars a hearing unless the petitioner "*diligently* but unsuccessfully seeks an evidentiary hearing in state court." *Taylor*, 504 F.3d at 444 (emphasis added). As the Supreme Court explained in *Williams*, "[d]iligence will require in the

usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court *in the manner prescribed by state law." See* 529 U.S. at 437, 120 S.Ct. 1479 (emphasis added). As the emphasized portion of this quotation reflects, the mere act of seeking and being denied a hearing in state court is not enough to satisfy § 2254(e)(2); rather, *Williams* requires that the petitioner do so "in the manner prescribed by state law." Other courts of appeals have recognized that merely seeking and being denied a hearing in state court does not entitle a defendant to a hearing in federal court under § 2254(e)(2). *See, e.g., Teti v. Bender,* 507 F.3d 50, 62 (1st Cir.2007); *see also Smith v. Bowersox,* 311 F.3d 915, 921–22 (8th Cir.2002); *Dowthitt v. Johnson,* 230 F.3d 733, 758 (5th Cir.2000) ("Mere requests for evidentiary hearings will not suffice; the petitioner must be diligent in pursuing the factual development of his claim."). As explained above, Boyd may have "sought" an evidentiary hearing in state court, but he did not present sufficient evidence in that court to permit the inference that he was in any way prejudiced by Sciolla's

handling of the initial plea. Nor did he argue that a hearing was necessary to develop evidence of prejudice. Pennsylvania law did not require the state courts to give Boyd a hearing until he did so; because Boyd never met this standard, he has failed to prove diligence such that he should be entitled to a hearing in federal court.[35]

Nor can Boyd show that the factual basis for his claim "could not have been previously discovered" through his diligence—one of the "other stringent requirements" of 28 U.S.C. § 2254(e)(2)(A)(ii). *See Williams,* 529 U.S. at 437, 120 S.Ct. 1479. By the end of his guilty plea hearing, Boyd knew all of the facts he needed to know to claim that Sciolla was ineffective. Boyd knew that Sciolla had not discussed the initial plea with him directly before rejecting it, and he knew that the potential sentencing range was far greater than the 4–8 years that the initial plea offer contemplated. And by the time he was sentenced, Boyd knew the facts necessary to claim prejudice insofar as he knew that he was receiv-

---

**35.** Judge Sloviter contends that "if a petitioner seeks and is denied a hearing in state court, there is nothing in § 2254(e)(2) that bars the district court from granting a hearing." *See* Sloviter Op. at 359. Such a holding would expand considerably this Court's holding in *Taylor,* which allows for an evidentiary hearing only when the petitioner has been "diligent" in state court.

Furthermore, Judge Sloviter's interpretation is inconsistent with the plain language of § 2254(e)(2). Had Congress intended to make a habeas petitioner's entitlement to a federal hearing dependent upon whether the state court had held one, it could have done so by replacing the language "applicant has failed to develop the factual basis of" in § 2254(e)(2) with the phrase "state court has failed to hold a hearing on." Section 2254(e)(2) does not state that the development of a factual claim requires an evidentiary hearing in state court and we should not assume that this is the only way a factual

record can be developed. *See United States ex rel. Hampton v. Leibach,* 347 F.3d 219, 240 (7th Cir.2003) (observing that affidavits could develop the factual basis for a counsel ineffectiveness claim for purposes of § 2254(e)(2)); *see also Taylor,* 504 F.3d at 436 (rejecting a petitioner's claim that, because the PCRA court declined to hold an evidentiary hearing based on an inadequate state procedural default rule, he was entitled to a hearing in federal court). Under Judge Sloviter's reading of § 2254(e)(2), a state prisoner could obtain an evidentiary hearing in federal court by filing an unsupported request for a hearing in state court, followed by a federal habeas petition which complains of the state court's failure to hold a hearing. This reading of § 2254(e)(2) cannot be reconciled with the Supreme Court's decision in *Williams,* which required that the state request be made "in the manner prescribed by state law." *See* 529 U.S. at 437, 120 S.Ct. 1479.

ing a higher sentence than 4–8 years and that he would have preferred the 4–8 year plea offer. Nothing prevented Boyd—who was represented by counsel each step of the way—from providing comprehensive (or at least, complete) affidavits to support his factual allegations. Yet Boyd did not do so in state court, even though such evidence was available to him. Thus, his efforts to develop the state court record cannot be considered diligent. *See Commonwealth v. Lambert,* 529 Pa. 320, 603 A.2d 568, 579 (1992) (affirming a trial court's denial of an evidentiary hearing where the evidence to be offered "could have been discovered much earlier with due diligence").

The Supreme Court has recognized that "AEDPA generally prohibits federal habeas courts from granting evidentiary hearings when applicants have failed to develop the factual bases for their claims in state courts." *Schriro v. Landrigan,* 550 U.S. 465, 473 n. 1, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007) (citing 28 U.S.C. § 2254(e)(2)). Though AEDPA leaves open "the potential for harsh results in some cases, we are not free to rewrite the statute that Congress has enacted." *Dodd v. United States,* 545 U.S. 353, 359, 125 S.Ct. 2478, 162 L.Ed.2d 343 (2005) (denying a habeas petition based upon AEDPA's statute of limita-

tions). That Boyd did not receive an evidentiary hearing in state court is perhaps regrettable, but it is a product of his own doing and should not be cured by granting him a hearing in federal court in contravention of AEDPA. Accordingly, I encourage the District Court on remand to review the record as developed in state court alone without granting an evidentiary hearing for further factual development.[36]

### B.

In light of the foregoing considerations, the issue should be framed as follows: In denying Boyd's *Strickland* claim against Sciolla, did the state courts render a decision that was "contrary to" or involved an "unreasonable application of" federal law as determined by the Supreme Court, or based on an "unreasonable determination of the facts" in light of the evidence presented in those courts?

### 1.

It is axiomatic that, to succeed on an ineffective assistance of counsel claim, a petitioner must establish both prongs of the test enunciated by the Supreme Court in *Strickland.* That test requires Boyd to demonstrate: (1) his attorney's performance was deficient in the sense that it fell

---

**36.** To the extent Judge Sloviter believes that *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), "actually required" the District Court to grant Boyd a hearing notwithstanding the language of § 2254(e)(2), *see* Sloviter Op. at 361, she is incorrect. *Townsend* described the circumstances in which a federal court was required to grant an evidentiary hearing *before* AEDPA became law. *See Townsend,* 372 U.S. at 313, 83 S.Ct. 745. As the Supreme Court explained in *Schriro,* "[i]n cases where an applicant for federal habeas relief *is not barred from obtaining an evidentiary hearing by 28 U.S.C. § 2254(e)(2),* the decision to grant such a hearing rests in the discretion of the district court," as it did before AEDPA under *Townsend. Schriro,* 550

U.S. at 468, 127 S.Ct. 1933 (emphasis added). As the emphasized language reflects, this does not mean that *Townsend* requires hearings which are forbidden by § 2254(e). Rather, *Townsend* reflects the pre-AEDPA standard. As we explained in *Campbell v. Vaughn,* 209 F.3d 280, 286 (3d Cir.2000): "AEDPA amended the federal habeas statute in such a way as to limit the availability of new evidentiary hearings on habeas review.... Prior to AEDPA, new evidentiary hearings were *required* in several circumstances.... AEDPA, in contrast, *permits* evidentiary hearings on habeas review, but only in a limited number of circumstances." *Id.* at 286 (citation omitted) (emphasis in original).

below an objective standard of reasonableness; and (2) he suffered prejudice as a result of the attorney's deficient performance. *See Strickland,* 466 U.S. at 687–88, 104 S.Ct. 2052. The Supreme Court has acknowledged that *Strickland* applies to counsel's conduct during plea negotiations. *See Hill v. Lockhart,* 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Thus, under *Strickland,* Boyd must demonstrate that Sciolla's act of telling the Commonwealth that its initial plea offer was unacceptable before discussing the matter with Boyd was deficient and that he was prejudiced by the deficiency; that is, he must prove that counsel's performance "fell below an objective standard of reasonableness," *Strickland,* 466 U.S. at 687–88, 104 S.Ct. 2052, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052.

We need not consider the ineffectiveness prong, however, if we determine that no prejudice resulted from counsel's conduct. *Strickland* approved of this approach explicitly:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffectiveness claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . *If it is easier to dispose of*

> *an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.*

*Id.* at 697, 104 S.Ct. 2052 (emphasis added). Our Court has followed this approach. *See McAleese v. Mazurkiewcz,* 1 F.3d 159, 170–71 (3d Cir.1993).[37]

To demonstrate prejudice, Boyd "must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Albrecht v. Horn,* 485 F.3d 103, 127 (3d Cir.2007) (internal quotation marks omitted). Where, as here, a petitioner alleges that counsel's ineffective assistance cost him the opportunity to take a plea, he must demonstrate a reasonable probability that, but for counsel's ineffective assistance, he would have accepted the foregone plea offer. *See Hill,* 474 U.S. at 59, 106 S.Ct. 366; *see also United States v. Jones,* 336 F.3d 245, 254 (3d Cir.2003); *United States v. Day,* 969 F.2d 39, 45 (3d Cir.1992). This showing requires "some 'objective evidence' that a petitioner would have accepted a plea offer." *Jones,* 336 F.3d at 254 (citation omitted); *cf. Meyers v. Gillis,* 142 F.3d 664, 668–69 (3d Cir. 1998) (finding ineffective assistance in the context of a plea offer where the petitioner's testimony that he would have rejected a plea was corroborated by other evidence in the record).

2.

With the foregoing standard in mind, we should conclude that the state court record resolves the question of *Strickland* prejudice.[38] In his affidavit before the Superior

---

**37.** Judge Sloviter criticizes my decision not to analyze the "cause" prong of *Strickland. See* Sloviter Op. at 357. I decline to do so, however, in light of precedents of the Supreme Court and the Third Circuit, and this decision should not be misconstrued as an approbation of Sciolla's conduct.

**38.** As explained above, the Magistrate Judge held an evidentiary hearing while laboring under the erroneous conclusion that there

Court on direct appeal, Boyd admitted that he was aware of the initial plea offer and its rejection. Boyd was told several times during his guilty plea hearing that the court could sentence him to 12½–25 years.[39] He also stated that he had discussed his case with his parents and Sciolla, was satisfied with Sciolla's performance, and still wanted to plead guilty, even though he knew he could receive a 25–year prison sentence. During that same hearing, Boyd was told the standard guidelines range, which coincided roughly with the 4–8 year range contemplated in the original plea offer. In light of this evidence, the

state court found that Sciolla informed Boyd of the initial plea offer and Boyd chose not to accept it. This was a reasonable interpretation of the transcript of the guilty plea hearing, which reflects that Boyd—an adult who was found competent to stand trial—was told about the possibility of a 12½–25 year sentence no fewer than five times, stated he understood each time, and asked no questions when invited to do so. Boyd's pleadings and affidavits—some of which do not even assert that he would have elected to take the initial plea offer, and contradict later affidavits on this point—reasonably are read as conceding his knowledge of the initial plea offer and his assent to its rejection.[40]

---

were no state court facts warranting AEDPA deference. This error required the District Court to disregard the fruits of that hearing, and examine the record to determine whether the state courts' findings of fact were reasonable in light of the evidence Boyd chose to place before them. *See Rolan v. Vaughn,* 445 F.3d 671, 681 (3d Cir.2006); *see also Lambert II,* 387 F.3d at 234–35. Nevertheless, the District Court's only citation to the record was to Boyd's testimony at the evidentiary hearing that he would have accepted the initial plea. Consequently, the District Court failed to assess the reasonableness of the state courts' disbelief of Boyd's claim that he would have accepted the initial plea offer *based on the evidence before them.* This too was error. *See Rolan,* 445 F.3d at 680–81.

Furthermore, as Chief Judge Scirica's opinion notes, once the Magistrate Judge conducted a hearing, the facts found by the Magistrate Judge were entitled to deference by the District Court, *see Hill v. Beyer,* 62 F.3d 474, 482 (3d Cir.1995), and could not be rejected without the benefit of a subsequent evidentiary hearing in the District Court.

In summary, to the extent the District Court relied on the evidentiary hearing transcript, it did so in violation of *Rolan,* and to the extent the District Court made different findings of fact based on that transcript, it did so in violation of *Hill.*

**39.** Because Judge Sloviter believes that the Magistrate Judge was "required" to hold an evidentiary hearing, *see* Sloviter Op. at 359–60, she repeats the District Court's error by

making no effort to distinguish the evidence before the Superior Court from the evidence generated at the hearing before the Magistrate Judge. Instead, like the District Court, Judge Sloviter's summary of the factual background relies on evidence which was *not* before the state courts, but which was presented for the first time to the Magistrate Judge. To remain faithful to § 2254(e)(2), I have attempted to separate the evidence that Boyd offered to the state courts from the much more voluminous (and sometimes inconsistent) evidence that he offered in federal court.

**40.** On direct appeal in state court, Boyd's counsel argued that Sciolla had communicated the initial plea offer "to [Boyd] and his parents," and that Boyd "accepted the advice of counsel and rejected the plea." App. 135. Likewise, Boyd averred that Sciolla "told me, through my mother" of the initial plea offer.

In her introduction, Judge Sloviter criticizes the state courts for their "assumption ... that Boyd 'knew about the initial plea offer yet decided to "take his chances with the discretion of the court." ' " Sloviter Op. at 374. The state courts made no such assumption. Rather, Boyd's counsel on direct appeal, Thomas Quinn, represented to the Superior Court that Boyd "decided to take his chances on the discretion of the court as to sentencing." App. 85–86. Whether one calls this a concession, an admission, or a stipulation, it most assuredly was *not* an "assumption" by the state court. The state courts took Quinn at his word; far from being "disastrously wrong," they had every right to do so.

And Boyd's parents' affidavits are only relevant as to what *they* would have said or done; they are irrelevant as to *Boyd's* intentions or actions.[41]  Additionally, these affidavits reasonably could have been rejected for the same reason Boyd's affidavit was incredible; *i.e.,* despite their claims as to what they would have told Boyd had they known of the guidelines, they, like their son, apparently made no objection on or off the record at the change of plea hearing.  Accordingly, Boyd has not shown that the PCRA court's conclusion that he was not prejudiced by Sciolla's conduct was contrary to, or an unreasonable application of, clearly established Supreme Court precedent and we should defer to the state court's factfinding in this regard.  *See* 28 U.S.C. §§ 2254(d) & (e)(1); *see also Weeks v. Snyder,* 219 F.3d 245, 259 (3d Cir.2000).

I appreciate the fact that to the extent Sciolla believed he could persuade the court to impose a more lenient sentence than the 4–8 year term the Commonwealth initially offered, hindsight shows that he was seriously mistaken.  But Boyd has not adduced clear and convincing evidence to rebut the state courts' implicit finding that there was no reasonable probability that, but for Sciolla's rejection of the initial plea offer, Boyd would have taken it.  All of the objective evidence before the state courts suggests that Boyd took his counsel's advice to try to persuade the court to be more forgiving than the Commonwealth was inclined to be in its initial plea offer.

Accordingly, the state courts' conclusion that Boyd was not prejudiced by Sciolla's rejection of the initial plea offer was nei-

ther "contrary to" nor an "unreasonable application of" Supreme Court precedent, nor based on an unreasonable determination of the facts in light of the evidence before them.  *See* 28 U.S.C. § 2254(d).  Accordingly, the District Court erred in granting the writ "[w]ithout deciding whether [ ] counsel acted reasonably." *United States v. Cross,* 308 F.3d 308, 311 (3d Cir.2002).

## VI.

For the foregoing reasons, I cannot support a remand in this case. Because Boyd is not entitled to an evidentiary hearing to further develop the factual record, all that is left is for this Court to apply AEDPA's deferential legal standard to the established factual record, a task that is well within our purview.  Whether we determine that Boyd's admittedly valid guilty plea forecloses his request for habeas relief under *Tollett* and *Mabry,* or whether we assess the merits of Boyd's *Strickland* claim under AEDPA's deferential standard, Boyd is not entitled to relief.  Accordingly, I respectfully dissent from the decision to remand the case.

---

**41.**  Boyd submitted affidavits from his parents to the effect that they would have advised him to accept the initial plea offer had they known of the guidelines range.  Without passing judgment on whether those affidavits are credible, I note that even if believed, the affidavits shed no light on the question whether Boyd would have heeded his parents' advice. *See Paters v. United States,* 159 F.3d 1043, 1047 (7th Cir.1998).